

1  **FARUQI & FARUQI, LLP**
2  David E. Bower (119546)
   10866 Wilshire Boulevard, Suite 1470
3  Los Angeles, CA 90024
   Telephone: (424) 256-2884
4  Facsimile: (424) 256-2885
   Email: dbower@faruqilaw.com

5

6  *Attorneys for Plaintiff*

7          **UNITED STATES DISTRICT COURT**

8          **CENTRAL DISTRIT OF CALIFORNIA**

| | |
|---|---|
| 9  NATALIE GORDON, Derivatively on | CASE NO. : |
| 10  Behalf of Nominal Defendant EDISON | **CV14-1058** ꓯꓯꓷꓳ·Aꓢ |
| 11  INTERNATIONAL, | |
| 12           Plaintiff, | |
| 13     v. | |
| 14 | |
| 15  JAGJEET S. BINDRA, FRANCE A. CÓRDOVA, BRADFORD M. | **VERIFIED SHAREHOLDER** |
| 16  FREEMAN, RONALD L. OLSON, | **DERIVATIVE COMPLAINT** |
| 17  THOMAS C. SUTTON, PETER J. TAYLOR, VANESSA C. L. CHANG, | **JURY TRIAL DEMANDED** |
| 18  THEODORE F. CRAVER, JR., LUIS G. | **FILED UNDER SEAL** |
| 19  NOGALES, RICHARD T. SCHLOSBERG, III, BRETT WHITE, | |
| 20  ROBERT L. ADLER, MARK CLARKE, WILLIAM J. SCILACCI and | |
| 21  BERTRAND A. VALDMAN | |
| 22 | |
| 23           Defendants, | |
| 24     and | |
| 25  EDISON INTERNATIONAL, | |
| 26 | |
| 27           Nominal Defendant. | |
| 28 | |

Plaintiff Natalie Gordon ("Plaintiff"), by and through her attorneys, derivatively on behalf of nominal defendant Edison International ("EIX" or the "Company"), submits this Verified Shareholder Derivative Complaint against the directors and officers named herein (collectively, the "Individual Defendants"). Plaintiff's allegations are based upon personal knowledge as to herself and her own acts, and upon information and belief developed from the investigation and analysis of her counsel, which includes, among other things, the review of certain of the Company's Board of Director ("Board") minutes garnered through a request for such information pursuant to California Corporations Code § 1601 and California common law, public filings by EIX with the U.S. Securities and Exchange Commission ("SEC"), as well as, press releases, news reports, analyst reports, complaints pending against the Company in state and federal courts, and other information available in the public domain.

## I.   NATURE OF THE ACTION

1.  This is a shareholder derivative action brought for the benefit of nominal defendant EIX against certain members of its Board and executive officers seeking to remedy defendants' breaches of fiduciary duties.

2.  EIX was incorporated on April 20, 1987, under the laws of the State of California for the purpose of becoming the parent holding company of Southern California Edison Company ("SCE"), a California public utility corporation, Edison Mission Energy ("EME"), an independent power producer, and Edison Capital, an infrastructure finance company. EME is an indirect, wholly-owned subsidiary of EIX.

3.  Since its founding in 1986, EME has functioned not as an independent company looking out for the best interest of its investors but as EIX's own personal piggy bank.  This has been allowed to occur because EME's officers and directors

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

have been personally hand-picked by EIX with the purpose of operating EME for EIX's sole benefit.

4.    For years, EIX has personally profited from its various subsidiaries by ordering these companies to make capital payments or pay dividends for EIX's benefit. For example, in 2007, EIX directed EME to pay a dividend of $899 million to its corporate parent Mission Energy Holding Company ("MEHC"), so that MEHC could pay off senior note obligations that were due.  This transaction harmed EME because EME was forced to pay this dividend payment by issuing its own senior notes. EME was forced to make the payment and took on the interest expense associated with the senior notes, at a period when EME was nearly insolvent. Moreover, EME was not an obligor on MEHC's senior notes and MEHC did not guarantee EME's new senior notes.   Therefore, while this transaction clearly benefitted MEHC, and EIX, by reducing the interest expense for the overall EIX organization, it clearly provided no apparent benefit to EME.

5.    In addition to the fact that EME now had billions of dollars in debt obligation, at the end of 2008, EME's business began to suffer as the coal industry declined.  As EME's financial condition worsened and became public news, EIX's stock price declined, due in part to the fact that the market and investors believed that EIX would have to contribute capital to support EME.   Around this time, the Individual Defendants started scrambling to protect EIX's interests and distance EIX from EME as it was clear that EME would have problems making the required payments due on its senior notes. As a result in or around 2009, EIX's Chief Executive Officer, President and Chairman of the Board Theodore F. Craver ("Craver") began publicly stating that EIX would not give any more capital to EME causing EIX's stock price to increase, but leaving EME with no solution to the cash crisis foisted upon it by the Individual Defendants.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

6. By 2011, EME continued to have significant financial problems, including but not limited to, an imminent cash crunch as well as revolving credit lines that would terminate in 2012 and $500 million in senior notes set to mature in 2013.

7. Despite having essentially bled EME dry, the Individual Defendants showed no remorse to EME's position and instead made the decision to have EIX abandon EME by allowing EME to file for chapter 11 bankruptcy and deconsolidate EME from the EIX empire. Before discarding EME by the wayside, however, the Individual Defendants caused EIX to engage in one last scheme to full take financial advantage of EME, and simultaneously putting EIX in harm's way.

8. The Individual Defendants did this by having EIX make one last unwarranted cash withdrawal of $183 million from EME under tax sharing agreements by and between the various EIX entities and then subsequently amending the tax sharing agreements to terminate EME, effectively stripping EME of billions of dollars in crucial payments over the next few years. Again, the sole purpose of this transaction was to funnel cash to EIX at the expense of EME and its creditors. EIX was able to carry out this scheme by exploiting its parent position over EME since EIX's own high-level executives also sat on the EME Board of Directors and were instructed to act solely for the benefit of EIX, to the detriment of EME.

9. As the Individual Defendants intended, EME entered bankruptcy. In connection with EME's Chapter 11 bankruptcy proceeding, a committee of EME's unsecured creditors ("Creditors' Committee") has filed a motion requesting the right to sue EIX, claiming it drained EME of billions of dollars in value. Specifically, the Creditors Committee is seeking bankruptcy-court approval to pursue legal claims related to the "abusive domination and control" of EME by EIX and to recover, among other things, the billions of dollars EME transferred to EIX plus additional

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

compensatory and punitive damages. The Creditors' Committee's motion was supported by certain of EME's senior unsecured noteholders and EME has indicated that it also is preparing to make similar allegations against EIX.

10. The Individual Defendants breached their fiduciary duties of loyalty and good faith by knowingly engaging in the illicit scheme against EME alleged herein, which has caused EIX to sustain damages, including but not limited to, costs and expenses incurred in connection with the litigation, and proposed litigation, against EIX.

## II.        JURISDICTION AND VENUE

11. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332. All defendants are completely diverse from the plaintiff and the amount in controversy exceeds $75,000.00.

12. This Court has personal jurisdiction over each of the defendants because each defendant is either a corporation conducting business and maintaining operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13. Venue is proper in this District pursuant to 28 U.S.C. §1391 because (i) one or more of the defendants either resides or maintains executives offices in the District; (ii) a substantial portion of the transactions and wrongs complained of herein occurred in the District; and (iii) defendants have received substantial compensation and other transfers of money in the District by doing business and engaging in activities having an effect in the District.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**III.     THE PARTIES**

14.     Plaintiff is a shareholder of EIX, was a shareholder of EIX at the time of the wrongdoing complained of herein, and has been a shareholder of EIX continuously since that time.  Plaintiff is a citizen of the State of New York.

15.     EIX is a California corporation that maintains headquarters in Rosemead, California.   EIX, through its subsidiaries, generates and distributes electric power. It also invests in transportation infrastructure and energy assets, including renewable energy.

16.     Defendant Jagjeet S. Bindra ("Bindra") has been a director of EIX and Southern California Edison Company ("SCE") since 2010.  Upon information and belief, Bindra is a citizen of the State of Texas.

17.     Defendant France A. Córdova ("Córdova") has been a director of EIX and SCE since 2004. Upon information and belief, Córdova is a citizen of the State of New Mexico.

18.     Defendant Bradford M. Freeman ("Freeman") has been a director of EIX and SCE since 2002.  Upon information and belief, Freeman is a citizen of the State of California.

19.     Defendant Ronald L. Olson ("Olson") has been a director of EIX and SCE since 1995.  Upon information and belief, Olson is a citizen of the State of California.

20.     Defendant Thomas C. Sutton ("Sutton") has been a director of EIX and SCE since 1995.  Upon information and belief, Sutton is a citizen of the State of Michigan.

21.     Defendant Peter J. Taylor ("Taylor") has been a director of EIX and SCE since 2011.  Upon information and belief, Tayor is a citizen of the State of California.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

22.     Defendant Vanessa C. L. Chang ("Chang") has been a Director EIX and SCE since 2007.   Upon information and belief, Chang is a citizen of the State of Texas.

23.     Defendant Craver has been the Chairman of the Board, President, and Chief Executive Officer of EIX since 2008. He has been a Director of EIX since 2007 and of SCE since 2008. He served as Chairman of the Board, President and Chief Executive Officer of Edison Mission Group ("EMG") from 2005 to 2008, and, prior to that, Executive Vice President, Chief Financial Officer and Treasurer of EIX.  Upon information and belief, Craver is a citizen of the State of California.

24.     Defendant Luis G. Nogales ("Nogales") has been a director of EIX and SCE since 1993.  Upon information and belief, Nogales is a citizen of the State of California.

25.     Defendant Richard T. Schlosberg, III ("Schlosberg") has been a director of EIX and SCE since 2002.  Upon information and belief, Schlosberg is a citizen of the State of Texas.

26.     Defendant Brett White ("White") has been a director of EIX and SCE since 2007.   Upon information and belief, White is a citizen of the State of California.

27.     Defendant Robert L. Adler ("Adler") is executive vice president and general counsel for EIX. He joined EIX on July 1, 2008. Adler was a director of EME from August 1, 2008 to 2012.  Prior to joining EIX, Adler was a partner at Munger, Tolles & Olson LLP, where he represented EIX.  Upon information and belief, Adler is a citizen of the State of California.

28.     Defendant Mark Clarke ("Clarke") is vice president and controller of EIX. Prior to his current role, Clarke was vice president and controller for EMG, which he joined in 1999.  Clarke was a director of EME during the 2012 period. Upon information and belief, Clarke is a citizen of the State of California.

7

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

29.     Defendant William J. Scilacci ("Scilacci") has served as EIX's executive vice president, chief financial officer ("CFO") and treasurer since August 2008.  Scilacci previously was senior vice president and CFO for three years for EMG.  Prior to joining EMG, Scilacci was senior vice president and CFO of SCE.  He joined SCE in 1984, was elected vice president and CFO in January 2000, and was elected senior vice president and CFO in January 2003.  Scilacci was a director of EME from August 1, 2008 to 2012.  Upon information and belief, Scilacci is a citizen of the State of California.

30.     Defendant Bertrand A. Valdman ("Valdman") is senior vice president of strategic planning for EIX.  Valdman was a director of EME during the 2012 period.   Upon information and belief, Valdman is a citizen of the State of Washington.

31.     Defendants Bindra, Córdova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg, White, Adler, Clarke, Scilacci and Valdman are referred to collectively herein as the "Individual Defendants."

## IV.     DUTIES OF THE INDIVIDUAL DEFENDANTS

32.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, loyalty, and candor and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

33.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

34.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.   By virtue of such duties, the officers and directors of the Company were required to, among other things:

- exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

- exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with the Company's by-laws and all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

- when placed on notice of improper or imprudent conduct by the Company and/or its employees, exercise good faith in taking action to correct the misconduct and prevent its recurrence.

35.     At all relevant times thereto, Adler, Clarke, Craver, Scilacci and Valdman as officers of the Company were bound by EIX's Employee Ethics and Compliance Code ("Employee Code").   The Employee Code states in relevant part:

**Fair Dealing**
We always should treat those with whom we work or do business fairly, honestly, and straightforwardly. We must never take unfair advantage of others through manipulation, concealment, abuse of privileged and confidential information, or misrepresentation. Our duty to act fairly extends to our customers, suppliers, contractors, competitors, coworkers, regulatory

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

agencies, investors, and communities. Fairness is at the heart of our value of Respect.

## Complying with Laws, Rules, Regulations, and Policies

*Edison employees must adhere to all laws, regulations, and other legal requirements that apply to our business. We can be a company and people with integrity only if we obey the law.*

### Guiding Principles on Legal and Regulatory Compliance

Our businesses are governed by many laws, rules, regulations, and regulatory decisions. We are regulated by the Federal Energy Regulatory Commission (FERC), California Public Utilities Commission (CPUC), Securities and Exchange Commission (SEC), Nuclear Regulatory Commission (NRC), North American Electric Reliability Corporation (NERC), as well as federal and state environmental and occupational safety, health, and other agencies. While no one person could know every law, rule, or regulation, as a company we are accountable for obeying them all. There are no exceptions. You should become familiar with the legal and regulatory requirements that apply to your job and to the jobs of any employees who report to you. You also are expected to seek appropriate legal guidance and training as necessary in areas that relate to your responsibilities. We all share the responsibility for detecting and preventing noncompliance with legal and regulatory requirements. We also share the responsibility for reporting any actual or suspected noncompliance. We are honest and straightforward in our discussions with regulatory agency representatives and government officials. During investigations, audits, and other inquiries, we fully cooperate with appropriate requests for information under the guidance of the Law Department.

## Conflicts of Interest

*We are expected to act in Edison's best interests. We should never use our position at Edison improperly to benefit personally or to benefit someone else or other organizations at the expense of Edison. Avoiding conflicts of interest is a key aspect of acting with integrity and striving for excellence.*

### Avoiding Conflicts of Interest

Situations where you may have a personal interest or potential gain that could be inconsistent with the company's best interests may involve a conflict of interest. We must avoid conflicts of interest.

We also should be wary of activities and relationships that could reasonably create the appearance of a conflict.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Conflicts are likely if you are in a position to gain financially from decisions you make on behalf of the company or if a family member, relative, or friend is involved or could gain financially. We are expected to make those decisions unclouded by personal interests.

You should report any potential conflict of interest to your manager or supervisor and resolve the conflict before proceeding. Even in cases where you believe no conflict is present, but you are aware there may be an appearance of a conflict, you should disclose and discuss this issue with your manager or supervisor.

36.    Finally, at all relevant times thereto, Bindra, Córdova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg and White as directors of the Company were bound by EIX's Directors Ethics and Compliance Code ("Director Code").  The Employee Code states in relevant part:

**CONFLICTS OF INTEREST**

Directors are expected to avoid any actual conflicts of interest between them and the Company. In addition, Directors should also avoid even the appearance of a conflict of interest. Situations, including those with suppliers, contractual counterparties, competitors or charitable organizations, where a Director may have a personal interest or potential gain that is inconsistent with the Company's best interests or make it difficult for the Director to exercise objective judgment may involve a conflict of interest. Conflicts of interest may also arise when a Director, or member of his or her immediate family, receives improper personal benefits as a result of his or her position with the Company.

**COMPLIANCE WITH APPLICABLE LAWS**

Directors must conduct all their financial, business and other activities in full compliance with applicable laws, rules and regulations.

**FAIR DEALING**

Directors shall endeavor to deal fairly with the Company's employees, customers, suppliers and competitors. Directors shall not take unfair advantage through manipulation, concealment, abuse of privileged information, misrepresentation of material facts, or any other unfair-dealing practice.

---

11

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**V.     FACTS**

**A.     EIX's Domination and Control of EME**

37.     At all relevant times hereto, EIX has dominated and controlled EME and its other various subsidiaries.  EIX has two business segments for financial reporting purposes: an electric utility operation segment (SCE) and a competitive power generation segment (EMG).

38.     SCE is an investor-owned public utility primarily engaged in the business of supplying electricity to an approximately 50,000-square-mile area of southern California. EMG is the holding company for its principal wholly owned subsidiary, EME. EME is also a holding company with subsidiaries and affiliates engaged in the business of developing, acquiring, owning or leasing, operating and selling energy and capacity from independent power production facilities.  EME's operating projects primarily consist of coal-fired generating facilities, natural gas-fired generating facilities and renewable energy facilities, which include wind projects and one biomass project.

39.     There are two levels of holding companies between EME and EIX:  1) EME's parent company, MEHC, which owns 100% of EME's common stock and; 2) EMG, which owns 100% of MEHC's common stock.  EIX owns 100% of EMG.

40.     Below is a chart demonstrating the EIX structure of its various subsidiaries:

///

///

///

///

///

///

///

12

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT



VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

41. EIX has always controlled EME and its management.

42. From 2004 to 2012, EME's Board always consisted of three directors which included the President of EME, the CFO of EIX and the General Counsel of EIX.

43. EIX used EME as its personal training ground for EIX executives thus ensuring that EME employees would always have EIX's interests at heart. EIX employees were regularly sent to EME to serve in senior positions before then being placed in executive officer positions at EIX and SCE. EIX also continuously alternated senior positions in EME thus ensuring that EME executives had loyalty to EIX first before EME.

44. The goal was made clear to all EME employees – promotion to a position at EIX. This way, EIX ensured that EME officers were always concerned about what was best for EIX, not EME. This was in addition to the fact that the EIX Board has always approved the executive compensation for EME officers ensuring EME officers' utmost devotion. *See* February 25, 2010 EIX Board Meeting Minutes attached hereto as Exhibit A at 6 [EIX000257-263]; February 23, 2012 EIX Board Meeting Minutes attached hereto as Exhibit B at 5 [000003-8]; February 24, 2011 EIX Board meeting minutes  attached hereto as Exhibit C at 7 [EIX000009-15].

45. In fact, some of the Individual Defendants are prime examples of EME officers who were eventually "promoted" to EIX officers. Craver was EIX's CFO and Treasurer from January 2000 through December 2004, before he became Chairman, President and CEO of EME. Craver served as at these positions at EME from January 2005 through April 2008, when he was eventually appointed to his current positions of President and Chairman of EIX. Likewise, Scilacci served as Senior Vice President and CFO at SCE from January 2003 through 2005 before he was appointed CFO of EME in 2005. He was EME's CFO from 2005 until August 2008 until he was eventually promoted to his current position as CFO of EIX.

---

14

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

46.     Third, EIX always represented that it and EME were one company.  In EME's public filings, EME always referred to itself a subsidiary of "Edison International" and EME and EIX shared similar logos.  EIX's financial reports were also telling because EIX's annual reports contained consolidated financial statements for EIX and its subsidiaries and affiliated companies (the "Consolidated Group") including EME and listed EME's senior notes as part of EIX Consolidated Group's long term debt. Lastly, EIX always publicly represented to the public and analysts that if necessary, EIX would support EME by making capital contributions to EME so that EME could meet its debts.

**B.     EIX Causes EME to Pay Illegal Dividends to MEHC**

47.     In 2006, EIX was publicly representing that it would contribute capital to EME. The market reacted favorably to this news and as a result, S&P upgraded its credit rating of EME.

48.     The truth of the matter was that EME was in desperate need of cash from EIX by the end of 2006.  In EME's Form 10-K for the 2006 fiscal year, EME reported total assets of $7.25 billion and total liabilities of $4.6 billion. Additionally, EME was responsible for approximately $2.9 billion in additional capital expenditures in connection with Midwest Generation, LLC ("Midwest Generation"), one of EME's subsidiaries.

49.     On December 12, 2006, EME disclosed an agreement in principle with the Illinois Environmental Protection Agency to reduce certain emissions at Midwest Generation's Illinois plant.  EME forecast that approximately $2.7 to $3.4 billion would have to be spent to meet these requirements.

50.     EME's financial condition did not improve in fiscal year 2007.  In EME's Form 10-K for the 2007 fiscal year, EME reported total assets of $7.3 billion and total liabilities of $5.3 billion, however, EME was also still on the hook for the

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

$2.9 billion in additional capital expenditures with regard to Midwest Generation making it real liabilities at least $8.2 billion.

51.    At this same time, MEHC had outstanding senior notes due.  In July 2001, MEHC issued $800 million of 13.50% senior secured notes due 2008.  MEHC was the sole obligor on its 13.5% notes and EME, nor any of its subsidiaries, had any obligation to make payment in connection with the notes.

52.    Despite the fact that EIX knew that EME was in actuality insolvent, EIX caused EME to pay two dividends totaling approximately $925 million to MEHC in order to pay off the notes.

53.    The first dividend payment occurred in January 2007 when EIX caused EME to pay a total of $25 million in dividends to MHE ("January 2007 Dividend"). MEHC used the proceeds of the January 2007 Dividend to make payments on its senior secured notes.

54.    The January 2007 Dividend, however, was not enough to dig MEHC out of its hole.  Thus, the second dividend, in the amount of $899 million, occurred in May 2007 (the "May 2007 Dividend" and collectively with the January 2007 Dividend the "Dividends") and while the May 2007 Dividend eliminated MEHC's debt it severely weakened EME's financial condition.

55.    According to EME's Form 10-K for fiscal year 2007:

> In May 2007, EME completed a private offering of $1.2 billion of its 7.00% senior notes due May 15, 2017, $800 million of its 7.20% senior notes due May 15, 2019 and $700 million of its 7.625% senior notes due May 15, 2027. EME used the net proceeds, together with cash on hand, to repay debt and make a dividend payment of $899 million to MEHC, which enabled MEHC to purchase substantially all of its 13.5% senior secured notes due 2008. In June 2007, MEHC redeemed in full its senior secured notes.

56.     Notably, EME had the ability to raise these funds due, in part, to its upgraded credit rating which was the result of EIX's strategic planning to make false representations to the market that it would give EME capital funding to help EME's financial condition.

57.     EIX was allowed to order EME to go through with this transaction because the EME Board was stacked with EIX insiders. Specifically, on the EME Board at that time was defendant Craver (currently EIX's CEO), Thomas R. McDaniel ("McDaniel") (then EIX's CFO) and J.A. Bouknight, Jr. ("Bouknight") (then EIX's General Counsel). EIX officers McDaniel and Bouknight not only controlled EME's board but also MEHC's board as MEHC's board consisted of McDaniel, Bouknight and John E. Bryson (then EIX's CEO and Chairman of MEHC's board).

58.     As a result of the Dividends, EIX's Board comprised of defendants Cordova, Freeman, Olson, Sutton, Nogales and Schlosberg and defendant Craver who was also a EME director knowingly burdened EME with roughly $925 million in debt.  The Dividends were unfair to EME because it received no consideration from MEHC from this exchange.  EME was never an obligor or guarantor on the debt repaid by MEHC and MEHC did not provide a guarantee of EME's new debt obligations.

59.     In sum, the Dividends allowed MEHC to pay its senior notes in full while reducing the EME's assets by approximately $925 million. Egregiously, these transactions were done at time when EME was already on the brink of insolvency, if not actually insolvent.   Unfortunately, for EME creditors, the payment of the Dividends ensured that EME would not be able to pay its own burgeoning debt when it became due.

///

///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## C.   EIX Reasserts Control Over EME's Board and its Financial Alternatives

60.   Starting in 2009, due to, among other things, uncertain market conditions and increased capital expenditures EME's performance was significantly declining.  Since EIX had always represented to the market that it was one company with EME, the market believed that EME would receive additional capital from EIX. As a result, EIX's stock price likewise started to decline.

61.   Realizing that EME's performance was harming EIX's stock price, defendant Craver, who was now CEO of EIX, started representing to analysts and the market that EIX would not contribute capital to EME to help the company financially recover. As a result, EIX's stock price started to rebound while EME's bond prices continued to fall.

62.   By mid-year 2010, the market saw the writing on the wall that EME was in serious financial trouble and faced severe liquidity problems due to the fact that $500 million of EME's senior notes would mature in 2013, and EME would not have enough cash to pay this debt.

63.   At all times the Board was well aware of EME's dire financial condition as the Board was continuously updated regarding EME's financial condition, including its risks, current capital and future forecast. *See* February 25, 2010 EIX Board Meeting Minutes attached hereto as Exhibit A at 2 [EIX000257-263]; April 22, 2010 EIX Board Meeting Minutes attached hereto as Exhibit D at 2 [EIX000264-269]; December 9, 2010 EIX Board Meeting Minutes attached hereto as Exhibit E at 3 [EIX000244-250]; December 8, 2011 EIX Board Meeting Minutes attached hereto as Exhibit F at 2, 4 [EIX000270-275].

64.   Further statements by EIX that it would not help EME with its financial debt, further served to increase EIX's stock price while again sending EME's bonds price downward.  Nonetheless, by mid-2012 it was the EIX Board calling the shots

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

and negotiating with EME's noteholders.  *See* EIX's February 23, 2012 Board meeting minutes attached hereto as Exhibit B at 2 [EIX000003-8] ("The EIX Board and management discussed…potential EMG discussions with bondholders.  The EIX Board commended EMG's management's work in addressing the issue"); EIX's September 6, 2012 Board meeting minutes attached hereto as Exhibit G at 3 [EIX 000183-188].

65.    Indeed, in May 2012, defendant Craver was openly telling the market that it was EIX, not EME that was negotiating with EME's senior noteholders making clear that EIX was controlling EME and deciding EME's financial fate.

66.    In July 2012, EME also expanded its Board.  In light of EME's worsening financial condition and EME's 2013 note maturity date looming, EIX decided to stack EME's Board with additional EIX insiders to ensure complete control.  On July 10, 2012, four directors were added to the EME Board: non-EIX executives Frederic F. Brace and Hugh E. Sawyer and EIX executives Clarke (EIX's Controller) and Valdman (EIX's Senior Vice President for Strategic Planning).

67.    At this time, EME's Board already consisted of the following: EIX's CFO Scilacci, EIX's General Counsel Adler and EME President Pedro Pizarro ("Pizarro").  Notably, Pizarro was always in EIX's pocket and never had EME's best interests at heart due to the fact that his executive pay has always been approved by EIX's Board. *See* EXI's June 23, 2011 Board meeting minutes attached hereto as Exhibit H at 2 [EIX 000165-167].

### D.    The Tax Sharing Agreements Were EME's Most Valuable Asset

68.    As discussed above, the Consolidated Group filed a single, consolidated federal income tax return (and similar state tax returns) that enabled the group to offset the taxable income of one member with losses from one another.  In the Consolidated Group, the terms apportioning tax expenses and benefits amongst the Consolidated Group are set forth in certain tax sharing agreements (the "Tax Sharing

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Agreements"). Pursuant to the Tax Sharing Agreements, the taxable gains and losses of each subsidiary are usually calculated independently, but companies with gains who owe taxes are able to offset those gains with the losses of other companies who are party to the Tax Sharing Agreements. Generally, this results in subsidiaries with gains being required to make payments to members of the group with operating losses as a fee for the tax payment offsets. As a result, EME through payments received via the Tax Sharing Agreements, had been able to mitigate some of its operational losses during its recent financially unsuccessful period.

69. EME had not been performing well for the past few years. At the same time, other members of the Consolidated Group that normally generate taxable income have had tax losses due to bonus depreciation rules. Thus, losses have been carried forward to future periods rather than being monetized on a current basis. Accordingly, EME anticipated that payments to it under the Tax Sharing Agreements would be a significant cash flow in the next coming years. For instance, in 2009, EME received $187 million under the Tax Sharing Agreements for its 2009 federal tax benefits.

70. Given that the Tax Sharing Agreements were projected to generate significant liquidity in the coming years, the Tax Sharing Agreements were an important asset to EME. EME, however, could only realize the benefit of the Tax Sharing Agreements if EME continued to be part of the EIX enterprise and the Tax Sharing Agreements remained valid.

71. The Board always had full knowledge the Tax Sharing Agreement and its importance to EME given the Board was always apprised of EME "tax issues." *See* September 2, 2010 EIX Board Meeting Minutes attached hereto as Exhibit I at 4 [EIX177-182].

///

20

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

### E.   EIX Wrongfully Causes EME To Make An $183 Million Payment Under The Guise of the Tax Sharing Agreements

72.   From around 2005 to 2008, EME was a net provider to EIX's earnings and produced tax obligations for which it made payments to EIX. However, by 2009, EME was on the brink of insolvency and therefore had produced net losses. Under the Tax Sharing Agreements, when filing tax returns EIX had used EME's net losses to shield a significant amount of otherwise taxable income generated by other Consolidated Group members, particularly SCE.

73.   Even though EME continued to produce net losses and EME's bankruptcy was imminent, EIX decided to take money from EME under the guise of the Tax Sharing Agreements. On September 27, 2012, a few months before EME filed for Chapter 11 bankruptcy in December 2012, EIX caused EME to pay EIX approximately $183 million in a tax sharing payment (the "Tax Sharing Payment") which EIX then paid to SCE. It is reasonable to assume that the improper Tax Sharing Payment was discussed by the Board in the months leading up to the payment. *See* June 21, 2012 EIX Board meeting minutes attached hereto as Exhibit J at 1 [EIX000037-39] (Defendants Craver, Bindra, Chang, Córdova, Freeman, Nogales, Olson, Schlosberg, Sutton, Taylor, Adler, Scilacci, Valdman and White discussed "new growth opportunities, EIX capital allocation" and "EME strategy").

74.   There was no credible reason for EIX to cause EME to make this payment under the Tax Sharing Agreement. Defendants Bindra, Córdova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg, and White as EIX and SCE directors together with Adler, Clarke, Scilacci and Valdman as EME directors designed and executed the Tax Sharing Payment knowing that EME's finances were severely strained and that bankruptcy was already a foregone conclusion for EME. The Individual Defendants approved the Tax Sharing Payment to drain whatever assets it could from EME before it filed for bankruptcy.

75.     The sole purpose of this transaction was to funnel cash to SCE and the EIX enterprise at the expense of EME and its creditors. There was no justification for EME to have made the Tax Sharing Payment since the Tax Sharing Payment was not required of EME under the Tax Sharing Agreements. Moreover, at that time, EME owed interest payments of $97.5 million due on certain of its senior notes on November 15, 2012 and $38.1 million on certain other senior notes due December 15, 2012.  $500 million of senior notes were additionally set to mature in 2013.

76.     At the time of the Tax Sharing Payment, the Board was well aware of EME's financial problems, including EME's looming debt problems, since discussions regarding EME's financing plans and forecasts were routinely discussed throughout the years.  *See* June 24, 2010 EIX Board meeting minutes attached hereto as Exhibit K at 4 [EIX000168-171] ("management and the Board engaged in an extensive review and discussion of…EMG's strategic alternatives, and EIX, SCE and EMG financial forecasts"); February 24, 2011 EIX Board meeting minutes attached hereto as Exhibit C at 5 [EIX000009-15] (reported on "updates to the SCE and EME 2011 financing plans").

77.     The Board was particularly knowledgeable that EME could not meet its notes obligations when they came due having had numerous discussions regarding EME's notes debt. In a March 18, 2011 Board meeting, defendants Craver, Bindra, Chang, Córdova, Freeman, Olson, Scholosberg, White, Adler, Valdman and Scilacci were informed on EME's "debt maturities." *See* March 18, 2011 EIX Board meeting minutes  attached hereto as Exhibit L at 2 [EIX000020-21]; *see also* April 26, 2011 EIX Board meeting minutes attached hereto as Exhibit M at 2 [000024-28] (Board was updated on "EMG liquidity and financing options" and "external experts retained to provide advice on liquidity issues, tax issues affecting EMG liquidity, and potential restructuring options"); May 25, 2012 EIX Board Meeting Minutes attached hereto as Exhibit N at 2 [EIX000035-36] (defendant Adler provided an

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

"update on EMG, including the status of engagement with Edison Mission Energy bondholders").

78.    Likewise, in a Board meeting held on September 6, 2012, a mere 21 days before the Tax Sharing Payment occurred, defendant Adler was reporting to the EIX Board (defendants Craver, Bindra, Chang, Córdova, Freeman, Nogales, Olson, Schlosberg, Sutton, Taylor and White) on the "EME Restructuring Report." *See* Exhibit G at 3. Specifically, defendant Adler reported to the Board with regard to "the EME restructuring process, discussions with EME bondholders' advisors and factors affecting EIX's position in negotiations with the advisors." *Id.* Defendant Craver, in turn, "commented on EIX's position in negotiations with EME bondholders' advisors." *Id.* The EIX Board was also informed of "EME's liquidity and business conditions." *Id.* at 4.

79.    Thus, there is no doubt that the Board was intimately familiar with EME's financial crisis and was being continuously informed regarding EME's restructuring such that they knew that EME was insolvent and could not meet its obligations as they came due.  Despite this knowledge, the Board still improperly transferred $183 million to EIX via the Tax Sharing Payment causing significant harm to EME and its creditors.

**F.    Immediately After EME Pays the Tax Sharing Payment the Individual Defendants Strip EME of the Tax Sharing Agreements**

80.    Once EIX received the Tax Sharing Payment, Bindra, Córdova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg, White, Adler, Clarke, Scilacci and Valdman saw no further use for EME.  To add insult to injury, despite the fact that EME paid the Tax Sharing Payment to EIX under the Tax Sharing Agreements, a little over a month later, EIX sent written notice to EME via EMG that the Tax Sharing Agreements would terminate with respect to EME on

December 31, 2012.  That same day, Clarke as President of EMG executed a modification of the Tax Sharing Agreements terminating them with regard to EME effective December 31, 2013.  As a result, EME would no longer receive any payments from EIX and its subsidiaries for any net losses produced by EME therefore causing EME to be cut off from all benefits after December 31, 2013.

81.     To review, the Board (defendants Bindra, Córdova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg and White), who are also SCE directors, and defendants Adler, Clarke, Scilacci and Valdman as EME directors caused EME to pay a $183 million payment under the Tax Sharing Agreements to SCE via EIX and once this improper transaction occurred, they immediately terminated the Tax Sharing Agreement with respect to EME.  As discussed above, the Tax Sharing Agreements were EME's most valuable asset as the payments from the Tax Sharing Agreements were expected to bring substantial revenue to EME for the next couple of years.

82.     The Individual Defendants also sought to manipulate the timing of EME's bankruptcy filing to EIX's advantage, specifically delaying commencement of the bankruptcy so that EIX could adversely amend the Tax Sharing Agreement to provide for termination of EME's participation in the Tax Sharing Agreement, before the bankruptcy was initiated. Notably, at the time EME was stripped of its interest in the Tax Sharing Agreement EIX controlled the EME Board and therefore had authority over the timing of EME's bankruptcy.

83.     Defendants Bindra, Córdova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg, and White as EIX and SCE directors together with Adler, Clarke, Scilacci and Valdman as EME directors exerted their controls over EME to ensure that the Tax Sharing Agreements were in place at the time EME made the $183 million payment before allowing EME to file for bankruptcy.  This is demonstrated by the fact that during an October 25, 2012 EIX Board meeting

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    attended by defendants Craver, Bindra, Chang, Córdova, Freeman, Nogales,

2    Schlosberg, Sutton, Olson and White, defendant Adler discussed with the Board

3    "governance changes likely to result from an EME bankruptcy" and "personnel and

4    tax impacts." *See* October 25, 2012 EIX Board meeting minutes attached hereto as

5    Exhibit O at 2 [EIX000228-232].

6         84.    A filing for a Chapter 11 bankruptcy would have protected EME and its

7    creditors because EIX would not have been able to terminate the Tax Sharing

8    Agreements unless it could establish adequate grounds to obtain relief from the

9    automatic stay placed on bankruptcy cases and obtain bankruptcy court approval to

10   terminate the agreements.  The Individual Defendants, who only had EIX's interests

11   at heart, obviously could not allow this happen.

12        **G.    EME Files For Bankruptcy**

13        85.    Due to EIX forcing EME to make the Tax Sharing Payment, EME

14   could not make payments on its senior notes specifically a scheduled $97.5 million

15   interest payment due November 15, 2012.  The 30 day payment grace period expired

16   on December 15, 2012, when EME was supposed to make an additional $38.1

17   million interest payment on other senior notes.  These are payments that could easily

18   have been made but for the $183 million Tax Sharing Payment.  Having failed to

19   make these payments, EME filed for bankruptcy on December 17, 2012.

20        86.    On the day before EME filed its bankruptcy petition, December 16,

21   2012, EIX, EMG, MEHC, EME, and the ad hoc committee of holders of EME's

22   senior notes (the "Ad Hoc Group") entered into the Transaction Support Agreement.

23   The Transaction Support Agreement was approved by the Board (defendants Craver,

24   Bindra, Chang, Córdova, Freeman, Nogales, Olson, Schlosberg, Sutton, Taylor and

25   White) at the December 13, 2012 Board meeting which was also attended by

26   defendants Adler, Scilacci, Valdman.  *See* December 13, 2012 EIX Board meeting

27   minutes attached hereto as Exhibit P at 2 [EIX000251-256].

28

87.     The purpose of the Transaction Support Agreement was for the Individual Defendants to avoid liability with regard to their part in defrauding EME and its creditors.   Under the terms of the Transaction Support Agreement, EIX, EMG and MEHC would permit EME to remain in the Consolidated Group and receive payments due under the Tax Sharing Agreements until December 31, 2014. In return, EME was required to give ***full releases*** of EIX, EMG and MEHC, and each of their officers and directors including the Individual Defendants.   These releases were the payoff that EIX required for the paltry exchange of an additional year of payments under the Tax Sharing Agreements.

## H.     The Creditors' Committee Seeks Standing to Sue EIX and the Individual Defendants Due to Their Role in Defrauding EME and its Creditors

88.     In connection with EME's bankruptcy proceeding, on January 31, 2013, the bankruptcy court entered an order authorizing the EME debtors and the Creditors' Committee to conduct an examination of EIX and certain related parties pursuant to Rule 2004 of the Bankruptcy Rules (the "2004 Order"). The objective of the 2004 Order was to permit the debtors of EME to investigate potential claims and causes of action against EIX that would be released by the proposed settlement set forth in the Transaction Support Agreement.

89.     Under the 2004 Order, the Creditors' Committee had reviewed more than 147,000 documents, roughly 1 million pages, produced by EIX and analyzed certain transactions and other related matters.   The Creditors' Committee has also received another 5,860 documents produced by the EME debtors.

90.     On July 31, 2013, the Creditors' Committee filed a motion requesting the right to sue EIX claiming it improperly drained EME of billions of dollars, as described herein. Specifically, the Creditors' Committee is seeking bankruptcy-court

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

approval to pursue legal claims related to the "abusive domination and control" of EME by EIX.

91.     While the Creditors' Committee's investigation is ongoing, the Creditors Committee states that it has already uncovered facts supporting  numerous valuable claims against EIX, various EIX subsidiaries and certain current and former directors of EME and EIX including the Individual Defendants. These claims include, among other things, fraud, negligent misrepresentation, breach of fiduciary duty and unjust enrichment.

92.     The Creditors Committee has filed a proposed complaint with the bankruptcy court of which the Individual Defendants are named as defendants, alleging that EIX defrauded EME by effectuating fraudulent transfers of EME's assets to EIX via the Dividends and the Tax Sharing Payment and seeking the repayments of claims that the Creditor Committee states are worth billions of dollars plus compensatory and punitive damages.

93.     While EME has indicated that it has also been preparing to make similar allegations against EIX, the Creditors Committee is asking the bankruptcy court to let it sue on behalf of EME, stating EME has "numerous" conflicts of interest to pursue legal action against EIX including the fact that EME's Board was controlled by EIX at all times during the transactions complained of.

94.     The Creditors Committee is urging the bankruptcy court to force EIX to cooperate with their investigation into legal claims against EIX, arguing that EIX's refusal to do so has "severely prejudiced" their efforts. In court papers, the Creditors Committee alleges, among other things, that "EIX has improperly refused to produce thousands of documents...and has instructed its employees not to answer certain questions in depositions related to EME."

95.     Unsurprisingly, once the extent of EIX and the Individual Defendants' misconduct was revealed from the Creditors' Committee's investigation, on July 25,

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

2013 the Ad Hoc Group provided notice to EIX that it was terminating the Transaction Support Agreement. Moreover, the Ad Hoc Group supports the Creditor's Committee motion to pursue claims against EIX.  This is significant given the Ad Hoc Group holds in the aggregate approximately $2.8 billion of EME's approximately $3.7 billion of senior notes.

## VI.   THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTY

96.    In breach of their fiduciary duties of loyalty and good faith, defendants Bindra, Córdova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg, White, Adler, Clarke, Scilacci and Valdman  knowing caused EIX to swindle EME as described herein.

97.    Defendants Bindra, Córdova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg, White, Adler, Clarke, Scilacci and Valdman  knew that:

   a) EME received nothing of value in exchange for the Dividends and the Tax Sharing Payments;

   a) The sole purpose of the Dividends and the Tax Sharing Payment was to funnel cash to EIX at the expense of EIX and its creditors;

   b) At the time of the Tax Sharing Payment, EME's financial situation was hopeless and thus the objective of the Tax Sharing Payment was to strip EME of all valuable assets before EME filed for bankruptcy; and

   c) The timing of EME's bankruptcy had to be manipulated so that EIX could terminate the valuable Tax Sharing Agreements before EME filed for bankruptcy.

98.    Defendants Bindra, Córdova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg, White, Adler, Clarke, Scilacci and Valdman's decision to cause EIX to swindle EME by the Dividends and the Tax Sharing Payment, was

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  not, and could not possibly have been, the product of a good faith exercise of

2  business judgment.

3          99.     As a direct and proximate cause of Bindra, Córdova, Freeman, Olson,

4  Sutton, Taylor, Chang, Craver, Nogales, Schlosberg, White, Adler, Clarke, Scilacci

5  and Valdman's breaches of fiduciary duties, EIX has sustained damages, including

6  but not limited to, costs and expenses incurred in connection with the litigation

7  related to the EME bankruptcy.

8  **VII.        DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS**

9          100.   Plaintiff brings this action derivatively in the right and for the benefit of

10  EIX to redress breaches of fiduciary duties.

11          101.   Plaintiff will adequately and fairly represent the interests of the

12  Company and its shareholders in enforcing and prosecuting its rights.

13          102.   As a result of the facts set forth herein, Plaintiff has not made any

14  demand on the EIX Board to institute this action against the Individual Defendants.

15  Such demand would be a futile and useless act because the Board is incapable of

16  making an independent and disinterested decision to institute and vigorously

17  prosecute this action.

18          103.   At the time this action was commenced, the Board consisted of twelve

19  directors: non-defendant Ellen O. Tauscher and defendants Bindra, Córdova,

20  Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg and White.

21          104.   A majority of the Board is incapable of disinterestedly and

22  independently considering a demand to commence and vigorously prosecute this

23  action for the following reasons:

24                a.      Defendants Cordova, Freeman, Olson, Sutton, Nogales
                          and Schlosberg as EIX directors and Craver as an EME
25                        director are substantially likely to be held liable for
26                        breaching their fiduciary duties by defrauding EME,

27

28                                              29
   **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

including but not limited to causing EME to pay the Dividends as complained of herein;

b.  Defendants Bindra, Córdova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg and White are substantially likely to be held liable for breaching their fiduciary duties by defrauding EME and its creditors, by including but not limited to causing EME to make the Tax Sharing Payment as complained of herein;

c.  Defendants Bindra, Córdova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg and White face additional substantial likelihood of liability as they are named proposed defendants in an action the Creditors Committee is seeking to bring on behalf of EME in EME's bankruptcy proceeding. Bindra, Córdova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg and White are unable to pursue derivative claims because they would be increasing their exposure to liability in connection with the Creditors Committee's requested action against them and therefore Bindra, Córdova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg and White are conflicted from investigating the Company's misconduct and cannot independently consider a demand;

a.  Defendants Bindra, Cordova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg and White face additional substantial likelihood of liability because they were SCE directors at the time of the Tax Sharing Payment, and used their position to benefit SCE, and accordingly EIX, to the detriment of EME. In causing SCE to receive the improper Tax Sharing Payment, they consciously disregarded their responsibilities to SCE and abdicated their duties as SCE directors and therefore Bindra, Cordova, Freeman, Olson, Sutton, Taylor, Chang, Craver, Nogales, Schlosberg and White are conflicted from investigating the misconduct alleged herein and cannot independently consider a demand;

30

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

b.   Defendant Craver's principal professional occupation is his position as EIX's Chairman, President and CEO. In his position as Chairman, President and CEO which the Company recognizes makes him non-independent, Craver stands to earn millions of dollars in annual salary, bonuses, and other compensation, all of which must be approved by the Company's current Compensation Committee comprised of defendants Chang, Nogales, Taylor and White and therefore Craver lacks independence from these directors; and

c.   Defendant Olson is a partner of the law firm of Munger, Tolles & Olson LLP, which provides legal services to the EIX companies. The fees paid to Munger, Tolles & Olson LLP for legal services amounts to millions of dollars a year. The Company admits in its proxy filing that the legal services are expected to continue in the future, and therefore Olson lacks independence from the other directors of EIX.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duties

105.   Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

106.   As alleged in detail herein, each of the Individual Defendants had a duty to, *inter alia,* exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and, when placed on notice of improper or imprudent conduct by the Company and/or its employees, exercise good faith in taking action to correct the misconduct and prevent its recurrence.

107.   As alleged herein, the Individual Defendants knowingly implemented and engaged in the Company's illegal conduct of swindling EME, breaching their fiduciary duties of loyalty and good faith.

31

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1       108.    As a result of the Individual Defendants' breaches of fiduciary duties,

2 EIX has sustained damages, as alleged herein.

3 **PRAYER FOR RELIEF**

4       WHEREFORE, Plaintiff demands judgment as follows:

5

6       A.     Against all of the Individual Defendants and in favor of the Company

7 for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

8       B.     Granting appropriate equitable relief to remedy the Individual

9 Defendants' breaches of fiduciary duties;

10       C.     Awarding to Plaintiff the costs and disbursements of the action,

11 including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

12       D.     Granting such other and further relief as the Court deems just and

13 proper.

14

15

16 Dated: February 10, 2014          **FARUQI & FARUQI, LLP**

17

18                            _____

19                            David E. Bower (119546)

20                            10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024

21                            Telephone: (424) 256-2884

22                            Facsimile: (424) 256-2885
Email: dbower@faruqilaw.com

23

24                            _Attorneys for Plaintiff_

25

26

27

28 32

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## VERIFICATION

I, NATALIE GORDON, hereby verify that I have authorized the filing of the attached Verified Shareholder Derivative Complaint, that I have reviewed the Verified Shareholder Derivative Complaint and that the facts therein are true and correct to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing is true and correct.

DATE: February 6, 2014

_____
NATALIE GORDON

# EXHIBIT A



### MINUTES OF JOINT REGULAR MEETING OF
### THE BOARDS OF DIRECTORS OF
### EDISON INTERNATIONAL AND
### <u>SOUTHERN CALIFORNIA EDISON COMPANY</u>[1]

Held on Thursday, February 25, 2010, at the principal office located at 2244 Walnut Grove Avenue, Rosemead, California.

Present:   Chairman Craver,[2] Directors Chang, Córdova, Curtis, Fohrer,[3,4] Freeman, Nogales, Olson, Rosser, Schlosberg, Sutton, and White

Absent:    None

Edison International ("EIX") Executive Vice President and General Counsel Adler,[4] Executive Vice President Gault,[5] Executive Vice President, Chief Financial Officer and Treasurer Scilacci,[4] and Senior Vice President Parsky;[5] Southern California Edison Company ("SCE") President Fielder,[4] Senior Vice President and General Counsel Pickett,[4] and Senior Vice President and Chief Nuclear Officer Ridenoure;[6] EIX and SCE Vice President, Associate General Counsel, Chief Governance Officer and Corporate Secretary Mathews;[7] Edison Mission Group Inc. ("EMG") Chairman, President and Chief Executive Officer Litzinger;[4] and Special Advisor Sheppard[8] met with the Board.

Written materials were provided to the Board in advance of the meeting and at the meeting. These materials were reviewed during the meeting.

**Redacted: Non-EME Information**

[4]   Not present for any of the Executive Sessions.

**Redacted: Non-EME Information**

CONFIDENTIAL

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

**FINANCIAL UPDATE**

Redacted: Non-EME Information

       Mr. Scilacci reviewed the 2009 goals performance for EIX, SCE and EMG in each goal category, noting the key factors affecting the results. He responded to questions from the Board regarding the organization of the internal risk management function.

**2010 GOALS UPDATE AND RESOLUTIONS RE: 2010 GOALS**

Redacted: Non-EME Information

Redacted: Non-EME Information Mr. Scilacci next discussed the EMG EBITDA and security goals.

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

2

**Redacted: Non-EME Information**

## EMG REPORT

Mr. Litzinger reported on EMG's plan to proceed with selective non-catalytic reduction ("SNCR") systems to achieve compliance with the Illinois Combined Pollutant Standard for nitrogen oxide emissions. He responded to questions from the EIX Board. The EIX Board and management discussed key risks in the SNCR approach and reasons for choosing this approach.

Mr. Litzinger presented an update on the Mitsubishi wind turbine issues and the impact on EMG. He responded to questions from the EIX Board. Mr. Litzinger then reported on the status of the Laredo Ridge Wind Project and progress on placement of wind turbines.

Mr. Litzinger reported on recent EMG management changes, including replacement of Edison Mission Marketing & Trading, Inc. ("EMMT") leadership and changes in project development leadership.

## SCE REPORT

**Redacted: Non-EME Information**

Redacted: Non-EME Information

**Redacted: Non-EME Information**

3

EIX000259

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

4

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

CONFIDENTIAL                                                                    EIX000261



Redacted: Non-EME Information

Mr. Schlosberg reported on the Compensation and Executive Personnel Committee meeting held on February 24, 2010.  He reported that the Committee: Redacted: Non-EME Information b) established the 2009 annual incentive award pools for EIX, EMG and SCE, as applicable; c) approved 2009 annual incentive awards, 2010 salaries and 2010 long-term incentive awards for EIX, EMG and SCE officers, as applicable, Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information d) adopted the 2010 Executive Incentive Plan goals for EIX, EMG and SCE officers, as applicable, noting that these are the same as the 2010 corporate goals approved by the Board; Redacted: Non-EME Information

Redacted: Non-EME Information

6

EIX000262

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

**ADJOURNMENT**

There being no further business, the meeting was adjourned.

_____
Chairman of the Board,
Edison International

_____
Chairman of the Board,
Southern California Edison Company

_____
Lead Director
(Non-Management Executive Session only)

_____
Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

7

# EXHIBIT B



**MINUTES OF JOINT REGULAR MEETING OF**
**THE BOARDS OF DIRECTORS OF**
**EDISON INTERNATIONAL AND**
**SOUTHERN CALIFORNIA EDISON COMPANY**[1]

Held on Thursday, February 23, 2012, at the principal office located at 2244 Walnut Grove Avenue, Rosemead, California.

Present:     Chairman Craver,[2] Directors Bindra, Chang, Córdova, Curtis, Freeman, Litzinger,[3,4] Nogales, Olson, Rosser, Schlosberg, Sutton, Taylor and White

Absent:     None

Edison International ("EIX") Executive Vice President and General Counsel Adler,[4] Executive Vice President, Chief Financial Officer and Treasurer Scilacci[4] and Senior Vice President David;[5] Southern California Edison Company ("SCE") Senior Vice President and Chief Nuclear Officer Dietrich;[6] EIX and SCE Vice President, Associate General Counsel, Chief Governance Officer and Corporate Secretary Mathews;[4] Edison Mission Group Inc. ("EMG") President Pizarro;[4,7] and Special Advisor Sheppard[6] met with the Board.

Written materials were provided to the Board in advance of and at the meeting. These materials were reviewed during the meeting.

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

---

[4]     Present only for the Regular Session.

Redacted: Non-EME Information

[7]     Not present for the Operational Excellence discussion of SCE's December windstorm response and left the meeting after the EMG Report.

**REGULAR SESSION**

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

## OPERATIONAL EXCELLENCE

Mr. Pizarro discussed the Operational Excellence Management Model included in the materials previously provided to the Board. Management responded to questions from the EIX Board. Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

## EMG REPORT

Mr. Pizarro reported that Edison Mission Energy signed a memorandum of understanding with the City of Chicago. He discussed natural gas prices and corporate liquidity, the near-term implications, and potential self-help options. The EIX Board and management discussed the impact of low natural gas prices and potential EMG discussions with bondholders. The EIX Board commended EMG management's work in addressing the issues.

Redacted: Non-EME Information

Redacted: Non-EME Information

2

CONFIDENTIAL

SONGS REPORT

# Redacted: Privilege

# Redacted: Non-EME Information

# Redacted: Non-EME Information

Redacted: Non-EME Information

# Redacted: Non-EME Information

Redacted: Non-EME Information

# Redacted: Non-EME Information

3

EIX000005

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

4

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

## SECOND EXECUTIVE SESSION

## COMPENSATION AND EXECUTIVE PERSONNEL COMMITTEE REPORT

      Mr. Schlosberg further reported on the Compensation and Executive Personnel Committee meeting held on February 22, 2012. Referring to materials provided to the Board at the meeting, he described the process undertaken to determine and approve 2011 annual incentive awards, 2012 salaries and 2012 long-term incentive awards for EIX, EMG and SCE officers, as applicable.

5

EIX000007

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

## ADJOURNMENT

There being no further business, the meeting was adjourned.

_____
Chairman of the Board,
Edison International

_____
President,
Southern California Edison Company

_____
Lead Director (Non-Management Executive Session only)

_____
Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

6

EIX000008

# EXHIBIT C



## MINUTES OF JOINT REGULAR MEETING OF
## THE BOARDS OF DIRECTORS OF
## EDISON INTERNATIONAL AND
## SOUTHERN CALIFORNIA EDISON COMPANY[1]

Held on Thursday, February 24, 2011, at the principal office located at 2244 Walnut Grove Avenue, Rosemead, California.

Present:        Chairman Craver,[2] Directors Bindra, Chang,[3] Córdova, Curtis, Freeman, Litzinger,[4,5] Nogales, Olson, Rosser, Schlosberg, Sutton and White[6]

Absent:        None

Edison International ("EIX") Executive Vice President and General Counsel Adler,[5] Chief Financial Officer and Treasurer Scilacci[7] and Senior Vice President David;[8] Southern California Edison Company ("SCE") Executive Vice President and General Counsel Pickett[7] and Senior Vice President and Chief Nuclear Officer Dietrich;[9] EIX and SCE Vice President, Associate General Counsel, Chief Governance Officer and Corporate Secretary Mathews;[7] Edison Mission Group Inc. ("EMG") President Pizarro;[7] and Special Advisor Sheppard[9] met with the Board.

Written materials were provided to the Board in advance of and at the meeting. These materials were reviewed during the meeting.

**Redacted: Non-EME Information**

[7]   Present only for the Regular Session.

**Redacted: Non-EME Information**

CONFIDENTIAL

**EXECUTIVE SESSION**

# Redacted: Privilege

**NON-MANAGEMENT EXECUTIVE SESSION**

# Redacted: Privilege



Redacted: Non-EME Information

Mr. Scilacci presented the other 2011 goals.  He discussed the items that changed from the preliminary goals presented in December 2010, Redacted: Non-EME Information the EMG EBITDA goal, Redacted: Non-EME Information Redacted: Non-EME Information Mr. Scilacci noted that EMG's equivalent unplanned outage rate ("EUOR") goal was not changed after the Homer City outage. Redacted: Non-EME Information

Redacted: Non-EME Information

2

EIX000010

**Redacted: Non-EME Information**

**EMG REPORT**

       Mr. Pizarro discussed the recent Homer City accident and resulting outage, and actions being taken in response to the event.  He reviewed the dashboards previously provided to the EIX Board regarding the Illinois coal fleet, Homer City plant, and wind and gas fleet, highlighting recent developments.  Mr. Pizarro responded to questions from the EIX Board.

**SCE REPORT**

**Redacted: Non-EME Information**

3

CONFIDENTIAL

EIX000011



**FINANCE COMMITTEE REPORT**

   Mr. Nogales reported on the Finance Committee meeting held on February 23, 2011.  He reported that the Committee received: 

4

CONFIDENTIAL

EIX000012

Redacted: Non-EME Information

Redacted: Non-EME Information and c) updates to the SCE and EME 2011 financing plans.

Redacted: Non-EME Information

Redacted: Non-EME Information

5

CONFIDENTIAL

EIX000013



6

EIX000014

## EXECUTIVE SESSION

## COMPENSATION AND EXECUTIVE PERSONNEL COMMITTEE REPORT

Mr. Schlosberg further reported on the Compensation and Executive Personnel Committee meeting held on February 23, 2011. He reported that the Committee approved 2010 annual incentive awards, 2011 salaries and 2011 long-term incentive awards for EIX, EMG and SCE officers, as applicable.

Redacted: Non-EME Information

## ADJOURNMENT

There being no further business, the meeting was adjourned.

_____
Chairman of the Board,
Edison International

_____
President,
Southern California Edison Company

_____
Lead Director,
(Non-Management Executive Session only)

_____
Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

7

CONFIDENTIAL

EIX000015

# EXHIBIT D



## MINUTES OF JOINT REGULAR MEETING OF
## THE BOARDS OF DIRECTORS OF
## EDISON INTERNATIONAL AND
## SOUTHERN CALIFORNIA EDISON COMPANY[1]

Held on Thursday, April 22, 2010, at the principal office located at 2244 Walnut Grove Avenue, Rosemead, California.

Present:    Chairman Craver,[2] Directors Bindra, Chang,[3] Córdova, Curtis, Fohrer,[4,5] Freeman,[2] Nogales, Rosser, Schlosberg, Sutton, and White

Absent:    Olson

Edison International ("EIX") Executive Vice President and General Counsel Adler,[5] Executive Vice President Gault,[6] and Executive Vice President, Chief Financial Officer and Treasurer Scilacci;[5] Southern California Edison Company ("SCE") President Fielder,[5] Senior Vice President House,[7] Senior Vice President and Chief Nuclear Officer Ridenoure,[8] and Vice President Vasquez;[6] EIX and SCE Vice President, Associate General Counsel, Chief Governance Officer and Corporate Secretary Mathews;[5] Edison Mission Group Inc. ("EMG") Chairman, President and Chief Executive Officer Litzinger;[5] and Special Advisor Sheppard[9] met with the Board.

Written materials were provided to the Board in advance of the meeting and at the meeting. These materials were reviewed during the meeting.

Redacted: Non-EME Information

# Redacted: Non-EME Information

# Redacted: Non-EME Information

[5]   Not present for the Executive Session or the Independent Director Executive Session.

# Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

## EMG REPORT

Mr. Litzinger discussed the 2010 EMG earnings forecast by business line.  The EIX Board and management discussed factors affecting the forecast.  Mr. Litzinger described the impact of hedging activities on 2010 first quarter earnings and the earnings outlook.  He responded to questions from the EIX Board.  Mr. Litzinger described the impact of liquidity on hedging activities.  In response to a question from the EIX Board, Mr. Litzinger discussed the potential impact of pending legislation regarding derivatives.  The EIX Board and management discussed hedging strategy.

Mr. Liztinger then discussed EMG wind fleet issues and first quarter trading results.

## EMG STRATEGY

Mr. Craver introduced the EMG strategy discussion and explained the purpose of Mr. Litzinger's presentation.  Mr. Litzinger discussed the Illinois environmental compliance agreement requirements and timeline, the objectives of EMG's environmental compliance strategy, the scenarios for compliance analyzed by management, and key takeaways from the analysis.  The EIX Board and management discussed the factors considered in the analysis and the impact of the various options on EMG's business.  Mr. Litzinger discussed management's plans to seek regulatory acceptance of Trona technology, the financial impact of using Trona technology, and the key decision timeline.

Mr. Litzinger discussed Homer City environmental compliance issues, including technology options, regulatory uncertainty, and liquidity considerations.  He reviewed alternatives under consideration, and responded to questions from the EIX Board.  The EIX Board and management discussed industry trends in addressing environmental compliance.  Mr. Litzinger explained key risks and sensitivities considered in the analysis of alternatives, financial incentives for early retirement of the coal fleet, and the next steps.  Mr. Craver commented on the significant management attention to this issue.

2

EIX000265

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

CONFIDENTIAL

EIX000266

Redacted: Non-EME Information

Redacted: Non-EME Information

**FINANCE COMMITTEE REPORT**

       Mr. Nogales reported on the Finance Committee meeting held on April 21, 2010. He reported that: a) the EIX Committee reviewed EMG's Laredo Ridge wind project, noting management's view that building the project was the highest value alternative and that EMG will spend less capital in 2010 than approved by the EIX Board; Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

EIX000267

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

5

EIX000268

Redacted: Non-EME Information

Redacted: Non-EME Information

**ADJOURNMENT**

There being no further business, the meeting was adjourned.

Chairman of the Board,
Edison International

Chairman of the Board,
Southern California Edison Company

Lead Director
(Independent Director Executive Session only)

Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

6

CONFIDENTIAL

EIX000269

# EXHIBIT E



## MINUTES OF JOINT REGULAR MEETING OF
## THE BOARDS OF DIRECTORS OF
## EDISON INTERNATIONAL AND
## SOUTHERN CALIFORNIA EDISON COMPANY[1]

Held on Thursday, December 9, 2010, at the principal office located at 2244 Walnut Grove Avenue, Rosemead, California.

| | |
|---|---|
| Present: | Chairman Craver,[2] Directors Bindra, Chang, Curtis, Fohrer,[3,4] Freeman, Nogales, Olson, Rosser, Schlosberg, Sutton, and White |
| Absent: | Córdova |

Edison International ("EIX") Executive Vice President and General Counsel Adler,[4] Executive Vice President Gault,[5] and Executive Vice President, Chief Financial Officer and Treasurer Scilacci;[4] Southern California Edison Company ("SCE") President Fielder,[4] Senior Vice President and Chief Nuclear Officer Dietrich,[6] Senior Vice President House,[7] Senior Vice President and General Counsel Pickett,[4] Senior Vice President Sheppard,[6] and Vice President Vasquez;[5] EIX and SCE Vice President, Associate General Counsel, Chief Governance Officer and Corporate Secretary Mathews;[4] and Edison Mission Group Inc. ("EMG") Chairman, President and Chief Executive Officer Litzinger[4] and Senior Vice President McFarlan[5] met with the Board.

Written materials were provided to the Board in advance of and at the meeting. These materials were reviewed during the meeting.

### EIX EXECUTIVE SESSION

The EIX Board discussed proposed SCE and EMG management changes.

Redacted: Non-EME Information

[4]   Not present for the EIX Executive Session or Non-Management Executive Session.

Redacted: Non-EME Information

**REGULAR SESSION**

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Mr. Scilacci reviewed the strategic growth plan goals for SCE and EMG.  Management responded to questions from the Board.  T Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

2

CONFIDENTIAL

EIX000245

Redacted: Non-EME Information Mr. Scilacci presented Edison Mission Energy's ("EME") 2011 capital budget request and five-year capital forecast.

After discussion, on motion duly made, seconded and unanimously carried, the 2011 SCE and EME capital budgets were approved by the SCE and EIX Boards, respectively.

Redacted: Non-EME Information

Redacted: Non-EME Information

### EMG REPORT

Mr. Craver introduced the EMG report, noting that it would include the semi-annual fundamental forecast update. Mr. Litzinger reviewed EMG's coal fleet dashboard, calling attention to EMG's receipt of the Waukegan 7 plant permit from the Illinois Environmental Protection Agency. He reviewed the status of factors affecting EME's coal fleet retrofits. Mr. Litzinger reviewed the Homer City plant and wind and gas fleet dashboards, the status of emission credit issues, and energy price forward curves. The EIX Board and management discussed factors affecting energy prices. Mr. Litzinger presented EMG's fundamental forecast update, reviewing key changes and assumptions affecting the forecast. The EIX Board and management discussed the forecast and the impact of alternative actions. Management responded to questions from the EIX Board.

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

3

CONFIDENTIAL

EIX000246

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

CONFIDENTIAL

EIX000247

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

CONFIDENTIAL

EIX000248

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

CONFIDENTIAL

EIX000249

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

## ADJOURNMENT

There being no further business, the meeting was adjourned.

_____
Chairman of the Board,
Edison International

_____
Chairman of the Board,
Southern California Edison Company

_____
Lead Director
(Non-Management Executive Session only)

_____
Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

CONFIDENTIAL                                                                 EIX000250

# EXHIBIT F



## MINUTES OF JOINT REGULAR MEETING OF
## THE BOARDS OF DIRECTORS OF
## EDISON INTERNATIONAL AND
## <u>SOUTHERN CALIFORNIA EDISON COMPANY</u>[1]

Held on Thursday, December 8, 2011, at the principal office located at 2244 Walnut Grove Avenue, Rosemead, California.

Present:    Chairman Craver,[2] Directors Bindra, Chang, Córdova, Curtis, Freeman, Litzinger, [2, 3] Nogales, Olson, Rosser, Schlosberg, and White

Absent:    Sutton

Edison International ("EIX") Executive Vice President and General Counsel Adler,[2] Executive Vice President, Chief Financial Officer and Treasurer Scilacci[4] and Senior Vice President David;[5] Southern California Edison Company ("SCE") Senior Vice President and Chief Nuclear Officer Dietrich;[6] EIX and SCE Vice President, Associate General Counsel, Chief Governance Officer and Corporate Secretary Mathews;[4] Edison Mission Group Inc. ("EMG") President Pizarro; [4,7] and Special Advisor Sheppard[6] met with the Board.

Written materials were provided to the Board in advance of and at the meeting. These materials were reviewed during the meeting.

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

[7]    Not present for the Financial Update and 2012 Earnings Per Share ("EPS") Budget, 2012 Capital Budget and Five-Year Capital Plan, SCE Report, SONGS Report or Finance Committee Report.

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

**2012 CAPITAL BUDGET AND FIVE-YEAR CAPITAL PLAN**

Redacted: Non-EME Information

Mr. Scilacci presented the Edison Mission Energy ("EME") 2012 capital budget and five-year capital plan, and responded to questions from the EIX Board.

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

**2012 GOALS**

Redacted: Non-EME Information

CONFIDENTIAL

**Redacted: Non-EME Information**

Redacted: Non-EME Information Mr. Pizarro discussed EMG operational excellence goals. Mr. David explained the people and culture goals.

**EMG REPORT**

Mr. Pizarro called the EIX Board's attention to the report included in materials previously provided to the Board, and reported on a reduction in force at EMG.

**SCE REPORT**

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

3

EIX000272



Redacted: Non-EME Information

**FINANCE COMMITTEE REPORT; RESOLUTIONS RE: AMENDMENT OF FINANCE COMMITTEE CHARTER; AND SCE RESOLUTION RE: FINANCING AUTHORIZATION**

Mr. Freeman reported on the EIX Finance Committee meeting held on October 26, 2011 and the Committee meeting held on December 7, 2011. He reported that, on October 26, the EIX Committee increased EME's 2011 capital budget for gas-fired projects and contracted wind projects, and on December 7, the Committee: Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information b) reviewed the applicable EME and SCE 2012 financing plans, and the SCE Committee recommended that the SCE Board authorize an additional $750 million of SCE debt and preferred financings; c) Redacted: Non-EME Information

Redacted: Non-EME Information

4

EIX000273

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information



Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

CONFIDENTIAL

EIX000274

**Redacted: Non-EME Information**

Redacted: Non-EME Information
**Redacted: Non-EME Information**

## ADJOURNMENT

There being no further business, the meeting was adjourned.

_____
Chairman of the Board,
Edison International

_____
President,
Southern California Edison Company

_____
Lead Director (Non-Management Executive Session only)

_____
Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

6

CONFIDENTIAL EIX000275

# EXHIBIT G



## MINUTES OF JOINT REGULAR MEETING OF
## THE BOARDS OF DIRECTORS OF
## EDISON INTERNATIONAL AND
## <u>SOUTHERN CALIFORNIA EDISON COMPANY</u>[1]

Held on Thursday, September 6, 2012, at the principal office located at 2244 Walnut Grove Avenue, Rosemead, California.

Present:     Chairman Craver,[2] Directors Bindra, Chang, Córdova, Curtis, Freeman, Litzinger,[3,4] Nogales, Olson,[5] Schlosberg, Sutton, Taylor and White

Absent:      None

Edison International ("EIX") Executive Vice President and General Counsel Adler[4] and Executive Vice President, Chief Financial Officer and Treasurer Scilacci;[4] Southern California Edison Company ("SCE") Senior Vice President Dietrich;[6] EIX and SCE Vice President, Associate General Counsel, Chief Governance Officer and Corporate Secretary Mathews;[4] Edison Mission Energy ("EME") President Pizarro;[7] Special Advisor Sheppard;[8] and SONGS consultants Alex Zarechnak[9] and Ellis Merschoff[9] met with the Board.

Written materials were provided to the Board in advance of and at the meeting. These materials were reviewed during the meeting.

_____

## Redacted: Non-EME Information

[7]    Not present for the EME Restructuring Report, the Non-Management Executive Session, the SONGS Report, the SONGS Strategy discussion, or the Independent Director Executive Session.

## Redacted: Non-EME Information

CONFIDENTIAL



2

CONFIDENTIAL

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

## EME RESTRUCTURING REPORT

Under attorney-client privilege, Mr. Adler reported on the EME restructuring process, discussions with EME bondholders' advisors, and factors affecting EIX's position in negotiations with the advisors. He reported that Powerton/Joliet bondholders are organizing. Mr. Adler responded to questions from the EIX Board. Mr. Craver commented on EIX's position in negotiations with EME bondholders' advisors.

## OPERATIONAL AND SERVICE EXCELLENCE

Redacted: Non-EME Information

Calling the Board's attention to materials provided in advance of the meeting, Mr. Pizarro reported on EME operational excellence, discussed key metrics and performance, and responded to questions from the EIX Board.

CONFIDENTIAL

EIX000185

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Mr. Freeman reported on the Finance Committee meeting held on September 6, 2012. He reported that: Redacted: Non-EME Information Redacted: Non-EME Information ) the EIX Committee received updates on EME's liquidity and business conditions; Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

4

EIX000186

Redacted: Non-EME Information



Redacted: Non-EME Information



CONFIDENTIAL

EIX000187

Redacted: Non-EME Information

Redacted: Non-EME Information

**ADJOURNMENT**

There being no further business, the meeting was adjourned.

Chairman of the Board,
Edison International

President,
Southern California Edison Company

Lead Director (Non-Management and Independent
Director Executive Sessions only)

Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

6

EIX000188

# EXHIBIT H



## MINUTES OF JOINT REGULAR MEETING OF
## THE BOARDS OF DIRECTORS OF
## EDISON INTERNATIONAL AND
## SOUTHERN CALIFORNIA EDISON COMPANY[1]

Held on Thursday, June 23, 2011, at the Bel-Air Bay Club located at 16801 Pacific Coast Highway, Pacific Palisades, California.

Present:  Chairman Craver, Directors Bindra, Chang, Córdova, Curtis, Freeman, Litzinger,[2] Nogales, Schlosberg, Sutton and White[3]

Absent:  Olson and Rosser

Edison International ("EIX") Executive Vice President and General Counsel Adler, Executive Vice President, Chief Financial Officer and Treasurer Scilacci and Senior Vice President Valdman; EIX and Southern California Edison Company ("SCE") Vice President, Associate General Counsel, Chief Governance Officer and Corporate Secretary Mathews;[4] and Edison Mission Group Inc. ("EMG") President Pizarro[5] met with the Board.

Written materials were provided to the Board in advance of and at the meeting. These materials were reviewed during the meeting.

Redacted: Non-EME Information

Redacted: Non-EME Information

# Redacted: Non-EME Information

# Redacted: Non-EME Information

[5] Not present for the SCE discussion during the Strategy Session.

CONFIDENTIAL

**Redacted: Non-EME Information**

<u>COMPENSATION AND EXECUTIVE PERSONNEL COMMITTEE REPORT
AND RESOLUTIONS RE:  DIRECTOR COMPENSATION</u>

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

Mr. Schlosberg reported that the EIX Committee approved management's recommendation regarding the allocation of responsibility for payment of Mr. Pizarro's executive benefits, and the Committee reviewed an analysis of the 2011 shareholder advisory vote on executive compensation.

Redacted: Non-EME Information

**Redacted: Non-EME Information**

Redacted: Non-EME Information

**Redacted: Non-EME Information**

Redacted: Non-EME Information

**Redacted: Non-EME Information**

Redacted: Non-EME Information   Mr. Pizarro described EMG's strategies.  Mr. Valdman reviewed strategies for growth and diversification.  The Board and management engaged in a discussion of EIX, SCE and

2

CONFIDENTIAL                                                                                                                                    EIX000166

EMG risks and strategies.

**ADJOURNMENT**

     There being no further business, the meeting was adjourned.

_____
Chairman of the Board,
Edison International

_____
President,
Southern California Edison Company

_____
Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

CONFIDENTIAL                                                                                    EIX000167

# EXHIBIT I


EDISON
INTERNATIONAL®

**MINUTES OF JOINT REGULAR MEETING OF**
**THE BOARDS OF DIRECTORS OF**
**EDISON INTERNATIONAL AND**
**SOUTHERN CALIFORNIA EDISON COMPANY**[1]

Held on Thursday, September 2, 2010, at the principal office located at 2244 Walnut Grove Avenue, Rosemead, California.

| | |
|---|---|
| Present: | Chairman Craver,[2] Directors Bindra, Chang, Córdova, Curtis, Fohrer,[3,4] Freeman, Nogales, Olson, Rosser, Schlosberg, Sutton, and White[5] |
| Absent: | None |

Edison International ("EIX") Executive Vice President and General Counsel Adler,[6] Executive Vice President, Chief Financial Officer and Treasurer Scilacci,[7] and Senior Vice President David;[8] Southern California Edison Company ("SCE") President Fielder,[7] Senior Vice President and General Counsel Pickett,[7] Senior Vice President and Chief Nuclear Officer Sheppard,[9] and Senior Vice President Yazdi;[10] EIX and SCE Vice President, Associate General Counsel, Chief Governance Officer and Corporate Secretary Mathews;[7] and Edison Mission Group Inc. ("EMG") Chairman, President and Chief Executive Officer Litzinger[7] met with the Board.

Written materials were provided to the Board in advance of and at the meeting. These materials were reviewed during the meeting.

Redacted: Non-EME Information

[7]    Not present for the Executive Session or the Non-Management Executive Session.

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

# Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information



# Redacted: Non-EME Information

Redacted: Non-EME Information

# Redacted: Non-EME Information

CONFIDENTIAL

EIX000178



Redacted: Non-EME Information



## EMG REPORT

      Reviewing materials previously provided to the EIX Board, Mr. Litzinger reviewed the strategic alternatives discussed at the June Board meeting.  He described the status of key factors affecting the preferred alternatives for the Illinois and Homer City coal fleets.  He reviewed the wind fleet strategy and the status of factors affecting the strategy.  He also reported on the status of the emission reduction credit issue for the

3

EIX000179

planned Walnut Creek gas plant.  He responded to questions from the EIX Board.

        Mr. Litzinger reviewed management's proposed approach for monitoring progress on the EMG strategy with the EIX Board.  He identified developments since the June Board meeting, and responded to questions from the EIX Board.  He explained plans in the event of an adverse outcome of pending tax issues.  Mr. Craver discussed factors affecting the need to refinance the revolving credit facility and investor perceptions.





4

EIX000180

Redacted: Non-EME Information

Mr. Nogales reported on the Finance Committee meeting held on September 1, 2010.  He reported that EMG management reported on:  a) investment criteria, goals and performance of the EMG wind portfolio; b) the San Juan Mesa and Goat Mountain projects and the performance of the projects relative to target; and c) the overall wind portfolio meeting its target rate of return. Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

CONFIDENTIAL

EIX000181

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

**Redacted: Non-EME Information**

## ADJOURNMENT

There being no further business, the meeting was adjourned.

_____
Chairman of the Board,
Edison International

_____
Chairman of the Board,
Southern California Edison Company

_____
Lead Director
(Non-Management Executive Session only)

_____
Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

6

CONFIDENTIAL

EIX000182

# EXHIBIT J



### MINUTES OF JOINT REGULAR MEETING OF
### THE BOARDS OF DIRECTORS OF
### EDISON INTERNATIONAL AND
### <u>SOUTHERN CALIFORNIA EDISON COMPANY</u>[i]

Held on Thursday, June 21, 2012, at the Bel-Air Bay Club located at
16801 Pacific Coast Highway, Pacific Palisades, California.

Present:  Chairman Craver, Directors Bindra, Chang, Córdova,[2] Freeman,
Litzinger,[3] Nogales, Olson,[2] Schlosberg, Sutton, Taylor and White

Absent:  Curtis

Edison International ("EIX") Executive Vice President and General Counsel
Adler, Executive Vice President, Chief Financial Officer and Treasurer Scilacci and
Senior Vice President Valdman; EIX and Southern California Edison Company ("SCE")
Vice President, Associate General Counsel, Chief Governance Officer and Corporate
Secretary Mathews;[4] and Edison Mission Group Inc. ("EMG") President Pizarro[5] met
with the Board.

Written materials were provided to the Board in advance of and at the meeting.
These materials were reviewed during the meeting.

Redacted: Non-EME Information

# Redacted: Non-EME Information

Referring to materials previously provided to the Board, they discussed new growth
opportunities, EIX capital allocation, and under attorney-client privilege, EME strategy.

# Redacted: Non-EME Information

---

[5] Not present for the Strategy Session presentations regarding the San Onofre Nuclear Generating
Station ("SONGS"), Edison Mission Energy ("EME") strategy and EIX capital allocation.

EIX000037

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

CONFIDENTIAL

EIX000038

Redacted: Non-EME Information

Redacted: Non-EME Information

**ADJOURNMENT**

      There being no further business, the meeting was adjourned.

_____
Chairman of the Board,
Edison International

_____
President,
Southern California Edison Company

_____
Lead Director (Non-Management Executive Session only)

_____
Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

3

CONFIDENTIAL

EIX000039

# EXHIBIT K



**MINUTES OF JOINT REGULAR MEETING OF
THE BOARDS OF DIRECTORS OF
EDISON INTERNATIONAL AND
<u>SOUTHERN CALIFORNIA EDISON COMPANY</u>**[1]

Held on Thursday, June 24, 2010, at the Bel-Air Bay Club located at 16801 Pacific Coast Highway, Pacific Palisades, California.

Present: Chairman Craver, Directors Bindra, Chang, Córdova, Curtis, Fohrer,[2,3] Freeman, Nogales, Olson, Rosser, Schlosberg, Sutton, and White

Absent: None

Edison International ("EIX") Executive Vice President and General Counsel Adler,[3] and Executive Vice President, Chief Financial Officer and Treasurer Scilacci;[3] EIX and Southern California Edison Company ("SCE") Vice President, Associate General Counsel, Chief Governance Officer and Corporate Secretary Mathews;[4] and Edison Mission Group Inc. ("EMG") Chairman, President and Chief Executive Officer Litzinger[5] met with the Board.

Written materials were provided to the Board in advance of the meeting and reviewed during the meeting.

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

---

[5] Not present for the First Executive Session or the discussion of SCE's 2012 General Rate Case held in the Second Executive Session.

CONFIDENTIAL

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

2

EIX000169

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

3

**Redacted: Non-EME Information**

Reviewing materials previously provided to the Board, management and the Board engaged in an extensive review and discussion of SCE's 2012 General Rate Case, EMG's strategic alternatives, and EIX, SCE and EMG financial forecasts.

**ADJOURNMENT**

There being no further business, the meeting was adjourned.

_____
Chairman of the Board,
Edison International

_____
Chairman of the Board,
Southern California Edison Company

_____
Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

4

CONFIDENTIAL                                                                EIX000171

# EXHIBIT L



## MINUTES OF JOINT SPECIAL MEETING OF
## THE BOARDS OF DIRECTORS OF
## EDISON INTERNATIONAL AND
## SOUTHERN CALIFORNIA EDISON COMPANY[1]

Held on Friday, March 18, 2011, at the principal office located at 2244 Walnut Grove Avenue, Rosemead, California.

| Present: | Chairman Craver, Directors Bindra,[2] Chang,[2] Córdova,[2] Curtis,[2] Freeman,[2] Litzinger,[3] Olson,[2] Rosser,[2] Schlosberg,[2] and White[2] |
| --- | --- |
| Absent: | Directors Nogales and Sutton |

Edison International ("EIX") Executive Vice President and General Counsel Adler,[2] Executive Vice President Gault,[2] Executive Vice President, Chief Financial Officer and Treasurer Scilacci,[2] Senior Vice President Valdman and Vice President Kracke; Southern California Edison Company ("SCE") Senior Vice President and Chief Nuclear Officer Dietrich;[2] EIX and SCE Vice President, Associate General Counsel, Chief Governance Officer and Corporate Secretary Mathews; and Edison Mission Group Inc. ("EMG") President Pizarro[2,4] met with the Board.

### SONGS REPORT

## Redacted: Non-EME Information

## Redacted: Non-EME Information

[2]    Participated by conference telephone. It was determined that all Directors could communicate with each other.

## Redacted: Non-EME Information

[4]    Present only for the EMG Report.

CONFIDENTIAL                                                                                                          EIX000020

**Redacted: Non-EME Information**

### EMG REPORT

Mr. Pizarro reported on efforts to select a financial advisor to evaluate options for addressing Edison Mission Energy's debt maturities. He reported on the receipt of unsolicited inquiries regarding asset purchases and management's evaluation of the inquiries. The EIX Board and management discussed the parties making the inquiries and potential financial advisors.

Mr. Pizarro described a possible technical default on the Homer City lease, negotiations with the lessor and potential consequences. He responded to questions from the EIX Board.

Mr. Pizarro reported on the Environmental Protection Agency's draft HAPs/MACT rule and recent court decision in the Midwest Generation LLC New Source Review litigation.

### ADJOURNMENT

There being no further business, the meeting was adjourned.

_____
Chairman of the Board,
Edison International

_____
President,
Southern California Edison Company

_____
Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

2

EIX000021

# EXHIBIT M



## MINUTES OF JOINT REGULAR MEETING OF
## THE BOARDS OF DIRECTORS OF
## EDISON INTERNATIONAL AND
## SOUTHERN CALIFORNIA EDISON COMPANY[1]

Held on Thursday, April 26, 2012, at the principal office located at 2244 Walnut Grove Avenue, Rosemead, California.

Present:    Chairman Craver,[2] Directors Bindra, Chang, Córdova, Curtis, Freeman, Litzinger,[2,3] Nogales, Olson,[4] Schlosberg,[4] Sutton, Taylor and White

Absent:    None

Edison International ("EIX") Executive Vice President and General Counsel Adler,[2] Executive Vice President, Chief Financial Officer and Treasurer Scilacci[5] and Senior Vice President David;[6] Southern California Edison Company ("SCE") Senior Vice President and Chief Nuclear Officer Dietrich[7] and Vice President Miller;[6] EIX and SCE Vice President, Associate General Counsel, Chief Governance Officer and Corporate Secretary Mathews;[5] Edison Mission Group Inc. ("EMG") President Pizarro;[8] Special Advisor Sheppard;[7] Incident Management Team Inc. ("IMT") Consultant Bolmer;[6] and Davies Consulting LLC ("Davies") Consultant Deric[9] met with the Board.

Written materials were provided to the Board in advance of the meeting and reviewed during the meeting.

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

[8]  Not present for the Executive Session and left the meeting after the EMG Report.

Redacted: Non-EME Information

EIX000024

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

### EMG REPORT

Calling the EIX Board's attention to materials previously provided, Mr. Pizarro reported on the timing for the Fisk and Crawford plant shut-downs, and responded to questions from the EIX Board.

Mr. Pizarro provided an update on EMG liquidity and financing options, and responded to questions from the EIX Board. He reported on the external experts retained to provide advice on liquidity issues, tax issues affecting EMG liquidity, and potential restructuring options. Management responded to questions from the EIX Board.

Mr. Pizarro provided an update on Homer City. He discussed the implementation agreement between Homer City and General Electric Company, the status of discussions between General Electric and bondholders, and liquidity needs. He responded to questions from the EIX Board.

### SONGS REPORT



Redacted: Non-EME Information

CONFIDENTIAL

EIX000025

Redacted: Non-EME Information

# Redacted: Non-EME Information

**FINANCE COMMITTEE REPORT**

Mr. Freeman reported on the Finance Committee meeting held on April 25, 2012. He stated that management reported to the EIX and SCE Committees, as applicable, on:

Redacted: Non-EME Information

b) a decrease in planned capital spending at EMG; Redacted: Non-EME Information

Redacted: Non-EME Information and d) EMG's Capistrano wind capital raise transaction. Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

# Redacted: Non-EME Information

Redacted: Non-EME Information

# Redacted: Non-EME Information

3

EIX000026

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

CONFIDENTIAL

EIX000027

**Redacted: Non-EME Information**

Redacted: Non-EME Information

**Redacted: Non-EME Information**

## ADJOURNMENT

There being no further business, the meeting was adjourned.

_____
Chairman of the Board,
Edison International

_____
President,
Southern California Edison Company

_____
Nominating/Corporate Governance Committee Chair
(Independent Director Executive Session only)

_____
Lead Director (Non-Management Executive Session only)

_____
Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

5

CONFIDENTIAL

EIX000028

# EXHIBIT N



## MINUTES OF JOINT SPECIAL MEETING OF
## THE BOARDS OF DIRECTORS OF
## EDISON INTERNATIONAL AND
## SOUTHERN CALIFORNIA EDISON COMPANY[1]

Held on Friday, May 25, 2012, at the principal office located at 2244 Walnut Grove Avenue, Rosemead, California.

Present:     Chairman Craver,[2] Directors Bindra,[2] Chang, Córdova,[2] Freeman,[2] Litzinger,[3,4] Nogales,[2] Olson,[2] Schlosberg,[2] Taylor[2] and White[2]

Absent:      Curtis and Sutton

Edison International ("EIX") Executive Vice President and General Counsel Adler and Executive Vice President, Chief Financial Officer and Treasurer Scilacci; Southern California Edison Company; ("SCE") Executive Vice President Pickett[2,4] and Senior Vice President and Chief Nuclear Officer Dietrich;[2,5] EIX and SCE Vice President, Associate General Counsel, Chief Governance Officer and Corporate Secretary Mathews; and Special Advisor Sheppard[2,5] met with the Board.

Mr. Craver reviewed the meeting agenda.

Redacted: Non-EME Information

# Redacted: Non-EME Information

# Redacted: Non-EME Information

[4]   Left the meeting before the Edison Mission Group Inc. ("EMG") Update.

# Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

**EMG UPDATE**

Mr. Adler provided an update on EMG, including the status of engagement with Edison Mission Energy bondholders. He noted that a further report would be provided to the EIX Board at the June meeting. Management responded to questions from the EIX Board.

**ADJOURNMENT**

There being no further business, the meeting was adjourned.

_____
Chairman of the Board,
Edison International

_____
President,
Southern California Edison Company

_____
Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and Southern California Edison Company

2

CONFIDENTIAL

EIX000036

# EXHIBIT O



EDISON
INTERNATIONAL®

MINUTES OF JOINT REGULAR MEETING OF
THE BOARDS OF DIRECTORS OF
EDISON INTERNATIONAL AND
SOUTHERN CALIFORNIA EDISON COMPANY[1]

Held on Thursday, October 25, 2012, at the principal office located at
2244 Walnut Grove Avenue, Rosemead, California.

Present:      Chairman Craver,[2] Directors Bindra, Chang, Córdova,[3] Curtis,[4]
              Freeman, Litzinger,[5,6] Nogales, Olson, Schlosberg, Sutton and White

Absent:       Director Taylor

Edison International ("EIX") Executive Vice President and General Counsel Adler,[6]
Executive Vice President, Chief Financial Officer and Treasurer Scilacci,[6] Senior Vice
President David,[7] Vice President Kracke[6,8] and Director Trapp;[9] Southern California Edison
Company ("SCE") Senior Vice President Dietrich;[10] EIX and SCE Vice President, Associate
General Counsel, Chief Governance Officer and Corporate Secretary Mathews;[6] Edison
Mission Energy ("EME") President Pizarro;[11] and Special Advisor Sheppard[10] met with the
Board.

Written materials were provided to the Board in advance of and at the meeting. These
materials were reviewed during the meeting.

Redacted: Non-EME Information

[11]    Present only for the Risk Management Report and the Operational and Service Excellence Report.

EIX000228

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

## EME RESTRUCTURING REPORT

Under attorney-client privilege, Mr. Adler reported on EME restructuring discussions. Messrs. Adler and Craver responded to questions from the Board. Mr. Adler discussed governance changes likely to result from an EME bankruptcy filing. He also discussed personnel and tax impacts, and responded to additional questions from the Board.

2

CONFIDENTIAL

EIX000229

SONGS REPORT

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

3

# Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Mr. Schlosberg reported that Mr. Craver discussed potential 2012 incentive compensation issues related to SONGS, EME and the GRC delay. He reported that the Committee reviewed its Charter and recommended no changes. Redacted: Non-EME Information

# Redacted: Non-EME Information

Redacted: Non-EME Information

# Redacted: Non-EME Information

Redacted: Non-EME Information

# Redacted: Non-EME Information

Redacted: Non-EME Information

# Redacted: Non-EME Information

4

EIX000231



Redacted: Non-EME Information

Redacted: Non-EME Information

## ADJOURNMENT

There being no further business, the meeting was adjourned.

Chairman of the Board,
Edison International

President,
Southern California Edison Company

Lead Director (Non-Management Executive Sessions only)

Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

5

CONFIDENTIAL

EIX000232

EXHIBIT P

EDISON
INTERNATIONAL®

MINUTES OF JOINT REGULAR MEETING OF
THE BOARDS OF DIRECTORS OF
EDISON INTERNATIONAL AND
SOUTHERN CALIFORNIA EDISON COMPANY[1]

Held on Thursday, December 13, 2012, at the principal office located at 2244 Walnut Grove Avenue, Rosemead, California.

Present:     Chairman Craver,[2] Directors Bindra, Chang, Córdova,[3,4] Curtis,[3] Freeman,[5] Litzinger,[2,6] Nogales, Olson, Schlosberg, Sutton, Taylor and White[7]

Absent:      None

Edison International ("EIX") Executive Vice President and General Counsel Adler,[2] Executive Vice President, Chief Financial Officer and Treasurer Scilacci,[2] Senior Vice President Clayton[8] and Senior Vice President Valdman;[9] Southern California Edison Company ("SCE") Senior Vice President Dietrich;[10] EIX and SCE Vice President, Associate General Counsel, Chief Governance Officer and Corporate Secretary Mathews;[2] and Special Advisor Sheppard[10] met with the Board.

Written materials were provided to the Board in advance of and at the meeting. These materials were reviewed during the meeting.



CONFIDENTIAL

EIX000251

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

**EDISON MISSION ENERGY ("EME") RESTRUCTURING REPORT AND EIX
RESOLUTION RE: EME BANKRUPTCY**

Under attorney-client privilege, Mr. Adler reported on EME's restructuring status. Redacted:Privileged

Redacted:Privileged

Redacted:Privileged Referring to written materials previously provided to the Board, he described the discussions with EME bondholders and responded to questions from the EIX Board.

Mr. Adler reviewed the material terms of a proposed equity turnover transaction with EME and certain of its bondholders. The EIX Board and management discussed the terms.

Redacted:Privileged

Mr. Craver compared the options previously described to the Board to the proposed transaction. He described his view of the merits of the proposed transaction and the outlook for EME, and responded to questions from the EIX Board. Mr. Adler responded to additional questions from the EIX Board.

Mr. Craver discussed the proposed process for final approval of the transaction agreement, and responded to questions from the EIX Board.

After further discussion, on motion duly made, seconded and carried, the resolution attached as Exhibit C was approved by the EIX Board.

2

CONFIDENTIAL

FINANCIAL UPDATE

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

3

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

4

CONFIDENTIAL

EIX000254

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

5

CONFIDENTIAL

EIX000255

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

Redacted: Non-EME Information

**ADJOURNMENT**

There being no further business, the meeting was adjourned.

_____
Chairman of the Board,
Edison International

_____
President,
Southern California Edison Company

_____
Lead Director (Non-Management Executive Sessions only)

_____
Vice President, Associate General Counsel,
Chief Governance Officer and Corporate Secretary,
Edison International and
Southern California Edison Company

6

EIX000256

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| | |
|---|---|
| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )<br><br>NATALIE GORDON, Derivatively on Behalf of Nominal Defendant EDISON INTERNATIONAL, | **DEFENDANTS** ( Check box if you are representing yourself ☐ )<br><br>Janjeet S. Bindra, et al., |
| **(b) County of Residence of First Listed Plaintiff**   Nassau<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | **County of Residence of First Listed Defendant**   Los Angeles<br>*(IN U.S. PLAINTIFF CASES ONLY)* |
| **(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.<br><br>David E. Bower, FARUQI & FARUQI, LLP, 10866 Wilshire Boulevard, Suite 1470, LA, CA 90024. Telephone: (424) 256-2884. | **Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

FAX FILING

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ over $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Breaches of fiduciary duties against the individual defendants. Diversity jurisdiction pursuant to 28 U.S.C. section 1332.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☒ 891 Agricultural Acts | ☒ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number:

CV14-1058

CV-71 (11/13)    CIVIL COVER SHEET    Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes   ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes   ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above. ➡ | Western |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**                     DATE: February 10, 2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

NATALIE GORDON, Derivatively on Behalf of
Nominal Defendant EDISON INTERNATIONAL,

*Plaintiff(s)*

Jagjeet S. Bindra,  France A Cordova, Bradford M. Freeman,
Ronald L. Olson, Thomas C. Sutton,       Peter J. Taylor, Vanessa C. L. Chang,
Theodore F. Craver, Jr., Luis G. Nogales, Richard T. Schlosberg, III, Brett White,
Robert L. Adler, Mark Clarke, William J. Scilacci and Bertrand A. Valdman
Defendants,

and

Edison International,

Nominal Defendant.

*Defendant(s)*

Civil Action No.

CV14-1058 ODW-AS

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  David E. Bower (California State Bar No. 119546)
FARUQI & FARUQI, LLP
10866 Wilshire Boulevard, Suite 1470
Los Angeles, California 90024
Telephone: (424) 256-2884
E-mail: dbower@faruqilaw.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: FEB 1 2 2014

Signature of Clerk or Deputy Clerk

1184

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00 .

I declare under penalty of perjury that this information is true.


Date: _____       _____
                                      *Server's signature*

                                      _____
                                      *Printed name and title*


                                      _____
                                      *Server's address*

Additional information regarding attempted service, etc:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | CASE NUMBER |
|---|---|---|
| NATALIE GORDON | | 14-CV-01058 ODW-ASx |
| | PLAINTIFF(S) | |
| v. | | |
| JAGJEET S. BINDRA et al | | **NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM** |
| | DEFENDANT(S). | |

**NOTICE TO PARTIES:**

It is the policy of this Court to encourage settlement of civil litigation when such is in the best interest of the parties. The Court favors any reasonable means, including alternative dispute resolution (ADR), to accomplish this goal. *See* Civil L.R. 16-15. Unless exempted by the trial judge, parties in all civil cases must participate in an ADR process before trial. *See* Civil L.R. 16-15.1.

The district judge to whom the above-referenced case has been assigned is participating in an ADR Program that presumptively directs this case to either the Court Mediation Panel or to private mediation. *See* General Order No. 11-10, §5. For more information about the Mediation Panel, visit the Court website, www.cacd.uscourts.gov, under "ADR."

Pursuant to Civil L.R. 26-1(c), counsel are directed to furnish and discuss with their clients the attached ADR Notice To Parties *before* the conference of the parties mandated by Fed.R.Civ.P. 26(f). Based upon the consultation with their clients and discussion with opposing counsel, counsel must indicate the following in their Joint 26(f) Report: 1) whether the case is best suited for mediation with a neutral from the Court Mediation Panel or private mediation; and 2) when the mediation should occur. *See* Civil L.R. 26-1(c).

At the initial scheduling conference, counsel should be fully prepared to discuss their preference for referral to the Court Mediation Panel or to private mediation and when the mediation should occur. The Court will enter an Order/Referral to ADR at or around the time of the scheduling conference.

Clerk, U.S. District Court

Dated: 2/12/14

By: SBOURGEOIS

Deputy Clerk

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE TO PARTIES: COURT POLICY ON SETTLEMENT
### AND USE OF ALTERNATIVE DISPUTE RESOLUTION (ADR)
#### Counsel are required to furnish and discuss this Notice with their clients.

Despite the efforts of the courts to achieve a fair, timely and just outcome in all cases, litigation has become an often lengthy and expensive process. For this reason, it is this Court's policy to encourage parties to attempt to settle their disputes, whenever possible, through alternative dispute resolution (ADR).

ADR can reduce both the time it takes to resolve a case and the costs of litigation, which can be substantial. ADR options include mediation, arbitration (binding or non-binding), neutral evaluation (NE), conciliation, mini-trial and fact-finding. ADR can be either Court-directed or privately conducted.

The Court's ADR Program offers mediation through a panel of qualified and impartial attorneys who will encourage the fair, speedy and economic resolution of civil actions. Panel Mediators each have at least ten years of legal experience and are appointed by the Court. They volunteer their preparation time and the first three hours of a mediation session. This is a cost-effective way for parties to explore potential avenues of resolution.

This Court requires that counsel discuss with their clients the ADR options available and instructs them to come prepared to discuss the parties' choice of ADR option (settlement conference before a magistrate judge; Court Mediation Panel; private mediation) at the initial scheduling conference. Counsel are also required to indicate the client's choice of ADR option in advance of that conference. *See* Civil L.R. 26-1(c) and Fed.R.Civ.P. 26(f).

Clients and their counsel should carefully consider the anticipated expense of litigation, the uncertainties as to outcome, the time it will take to get to trial, the time an appeal will take if a decision is appealed, the burdens on a client's time, and the costs and expenses of litigation in relation to the amounts or stakes involved.

With more than 15,000 civil cases filed in the District in 2012, less than 1 percent actually went to trial. Most cases are settled between the parties; voluntarily dismissed; resolved through Court-directed or other forms of ADR; or dismissed by the Court as lacking in merit or for other reasons provided by law.

For more information about the Court's ADR Program, the Mediation Panel, and the profiles of mediators, visit the Court website, www.cacd.uscourts.gov, under "ADR."

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Otis D. Wright II _____ and the assigned Magistrate Judge is _____ Alka Sagar _____ .

The case number on all documents filed with the Court should read as follows:

## 14-CV-01058 ODW-ASx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

February 13, 2014
_____
Date

By  SBOURGEOIS
_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

[x] Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

[ ] Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

[ ] Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**