1    MUNGER, TOLLES & OLSON LLP
     John W. Spiegel (State Bar No. 78935)
2    john.spiegel@mto.com
     Kevin S. Allred (State Bar No. 125506)
3    kevin.allred@mto.com
     355 South Grand Avenue, 35th Floor
4    Los Angeles, California 90071-1560
     Telephone:   (213) 683-9100
5    Facsimile:    (213) 687-3702

6    Attorneys for Defendants Jagjeet S.
     Bindra, France A. Córdova, Bradford M.
7    Freeman, Ronald L. Olson, Thomas C.
     Sutton, Peter J. Taylor, Vanessa C. L.
8    Chang, Theodore F. Craver, Jr., Luis G.
     Nogales, Richard T. Schlosberg, III, Brett
9    White, Robert L. Adler, Mark Clarke,
     William J. Scilacci, Bertrand A. Valdman
10   and Nominal Defendant Edison
     International

11

12              UNITED STATES DISTRICT COURT

13       CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

14   NATALIE GORDON, Derivatively on      Case No. 14-CV-01058-ODW (ASx)
     Behalf of Nominal Defendant EDISON
15   INTERNATIONAL,                       **NOTICE OF MOTION AND
                                          MOTION TO DISMISS AMENDED
16              Plaintiff,                SHAREHOLDER DERIVATIVE
                                          COMPLAINT PURSUANT TO
17        v.                              FRCP RULES 12(b)(6) AND 23.1;
                                          MEMORANDUM OF POINTS AND
18   JAGJEET S. BINDRA, FRANCE A.         AUTHORITIES**
     CORDOVA, BRADFORD M.
19   FREEMAN, RONALD L. OLSON,            [Request for Judicial Notice filed
     THOMAS C. SUTTON, PETER J.           concurrently]
20   TAYLOR, VANESSA C. L. CHANG,
     THEODORE F. CRAVER, JR., LUIS
21   G. NOGALES, RICHARD T.
     SCHLOSBERG, III, BRETT WHITE,
22   ROBERT L. ADLER, MARK
     CLARKE, WILLIAM J. SCILACCI
23   and BERTRAND A. VALDMAN,

24              Defendants.              Date:    June 16, 2014
                                         Time:    1:30 p.m.
25        and                           Crtrm.:  11
                                         Judge:   Honorable Otis D. Wright II
26   EDISON INTERNATIONAL,

27              Nominal Defendant.

28

TO THE PARTIES HERETO AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 16, 2014 at 1:30 p.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Otis D. Wright II, located at 312 North Spring Street, Los Angeles, California, Defendants Jagjeet S. Bindra, France A. Córdova, Bradford M. Freeman, Ronald L. Olson, Thomas C. Sutton, Peter J. Taylor, Vanessa C. L. Chang, Theodore F. Craver, Jr., Luis G. Nogales, Richard T. Schlosberg, III, Brett White, Robert L. Adler, Mark Clarke, William J. Scilacci, Bertrand A. Valdman and Nominal Defendant Edison International will and hereby do move to dismiss the Amended Shareholder Derivative Complaint in the above-referenced action in its entirety.

This motion is made pursuant to Rule 12(b)(6) and Rule 23.1 of the *Federal Rules of Civil Procedure* on the ground that Plaintiff failed to make a pre-suit demand prior to filing this derivative lawsuit and such a demand is required and not excused and pursuant to Rule 12(b)(6) on the ground that Plaintiff's claim for breach of fiduciary duties based on the "dividend payments" fails to state a claim on which relief can be granted because it is time-barred.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Request for Judicial Notice filed concurrently herewith, the pleadings and records on file in this action, and such additional authority and argument as may be presented in Reply or at a hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 29, 2014.

1

Dated:  May 9, 2014

Respectfully submitted,
MUNGER, TOLLES & OLSON LLP

2

3

By: _____ */s/John w. Spiegel*

4

John W. Spiegel

5

Attorneys for Defendants Bindra, Córdova,
Freeman, Olson, Sutton, Taylor, Chang, Craver,
Nogales, Scholosberg, White, Adler, Clarke,
Scilacci and Valdman and Nominal Defendant
Edison International

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT. .................................1

II.    PLAINTIFF'S ALLEGATIONS AND CLAIMS..............................................2

    A.   The Parties............................................................................................2

    B.   Plaintiff Challenges "Dividend" And "Tax Sharing" Payments She Alleges EIX Improperly Caused Edison Mission Energy To Make..................................................................................................3

    C.   EME's Bankruptcy And The Settlement Entered Into By EIX.............5

III.   ARGUMENT. .................................................................................................6

    A.   The Standard For Pleading "Demand Futility".....................................8

    B.   Plaintiff Has Not Pled Facts Showing Demand Futility......................11

         1.   Plaintiff has not pled particularized facts showing demand futility with respect to her claim based on the dividend payments. ...............................................................................11

             (a)   Plaintiff has not satisfied the first *Aronson* prong by alleging particularized facts showing the director defendants face a substantial likelihood of liability with respect to the dividend payments. ............................11

             (b)   Plaintiff has not satisfied the second *Aronson* prong by showing a reasonable doubt EME's dividend payments were the product of a valid exercise of business judgment. ..........................................................19

         2.   Plaintiff has not pled particularized facts showing demand futility with respect to her claim based on the tax sharing payment.......................................................................20

             (a)   Plaintiff has not satisfied the first *Aronson* prong by alleging particularized facts showing the director defendants face a substantial likelihood of liability with respect to the tax sharing payment. ..........................20

             (b)   Plaintiff has not satisfied the second *Aronson* prong by showing a reasonable doubt EME's tax sharing payment was the product of a valid exercise in business judgment. ..........................................................22

         3.   Plaintiff has not alleged facts to support demand should be excused because the director defendants were named in the Creditors Committee's draft complaint or because of the "settlement" EIX entered into...................................................23

23472208.1

-i-

**TABLE OF CONTENTS**
(continued)

Page

4.    Plaintiff has not alleged facts showing either director defendant Craver or Olson is not independent and, even if she had, it would not support demand should be excused..........24

IV.    CONCLUSION. .................................................................................25

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 14-CV-01058-ODW (ASx)

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

### FEDERAL CASES

4
5
6

*Aviall, Inc., v. Ryder Syst., Inc.*,
  913 F.Supp. 826 (S.D.N.Y. 1996), *aff'd on other grounds*, 110 F.3d 892
  (2d Cir. 1997) ......................................................................... 14

7

*Brown v. Moll*,
  2010 WL 2898324 (N.D. Cal. July 21, 2010) ........................ 12, 13, 17

8
9

*Dreiling v. American Exp. Co.*,
  458 F.3d 942 (9th Cir. 2006) ............................................... 15

10
11

*Gordon v. Goodyear, Inc.*,
  2012 WL 2885695 (N.D. Ill. July 13, 2012) ............................. 3

12
13

*Hawaii Laborers Pens. Fund, etc., v. Farrell*,
  2007 WL 5255035 (C.D. Cal. Aug. 23, 2007) (Wright, J.) ................*passim*

14
15

*Hill v. Opus Corp.*,
  841 F.Supp.2d 1070 (C.D. Cal. 2011) .................................... 19

16
17

*In re Amer. Apparel, Inc. Shareholder Deriv. Litig.*,
  2012 WL 9506072 (C.D. Cal. July, 31, 2012) ............................ 7

18
19

*In re Asyst Tech., Inc. Deriv. Litig.*,
  2008 WL 2169021 (N.D. Cal. May 23, 2008) ............................ 8

20

*In re Brocade Comm. Systems, Inc., Deriv. Litig.*,
  615 F.Supp.2d 1018 (N.D. Cal. 2009)..................................... 17

21
22

*In re Keithley Instr., Inc., Deriv. Litig.*,
  599 F.Supp.2d 875 (N.D. Ohio 2008) .................................... 18

23
24

*In re Sagent Tech., Inc., Deriv. Litig.*,
  278 F.Supp.2d 1079 (N.D. Cal. 2003)................................... 12, 24

25
26

*In re Silicon Graphics, Inc., Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) .............................................*passim*

27
28

*In re Syntex Corp. Sec. Litig.*,
  855 F.Supp. 1086 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996)............ 18

23472208.1

-iii-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Teleglobe Comm. Corp.*,
  493 F.3d 345 (3rd Cir. 2007) ................................................................. 14

*In re Verisign, Inc., Deriv. Litig.*,
  531 F.Supp.2d 1173 (N.D. Cal. 2007) ............................................... 16, 18

*Iron Workers Local No. 25, etc., v. Bogart*,
  2012 WL 2160436 (N.D. Cal. June 13, 2012) ........................................ 7

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991) ................................................................................. 7

*Kernaghan v. Franklin*,
  2008 WL 4450268 (S.D.N.Y. Sept. 29, 2008) ...................................... 25

*Laborers' Local v. Intersil*,
  868 F.Supp.2d 838 (N.D. Cal. 2012) ..................................................... 7

*Lindell v. McCallum*,
  352 F.3d 1107 (7th Cir. 2003) .............................................................. 18

*Lucas v. Lewis*,
  428 Fed. Appx. 694 (9th Cir. 2011) ................................................. 7, 25

*Menowitz v. Brown*,
  991 F.2d 36 (2d Cir.1993) .................................................................... 18

*Newsome v. Gallacher*,
  722 F.3d 1257 (10th Cir. 2013) ............................................................ 14

*Potter v. Hughes*,
  546 F.3d 1051 (9th Cir. 2008) ........................................................ *passim*

*Rhodes v. Sutter Health*,
  2012 WL 662462 (E.D. Cal. Feb. 28, 2012) ......................................... 12

*Richardson v. Rel. Nat'l Indem. Co.*,
  2000 WL 284211 (N.D. Cal. Mar. 14, 2000) ........................................ 14

*Richardson v.Ulsh*,
  2007 WL 2713050 (D. N.J. Sept. 13, 2007) ..................................... 24-25

-iv-

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Ross v. Bernhard,*

4

396 U.S. 531 (1970) ............................................................................ 7

5

*Taylor v. Kissner,*

6

893 F.Supp.2d 659 (D. Del. 2012) ..................................................... 9

7

*Ziemba v. Cascade Intern., Inc.,*

256 F.3d 1194 (11th Cir. 2001) ........................................................ 15

8

**S**TATE **C**ASES

9

*Aronson v. Lewis,*

10

473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v. Eisner,*

11

746 A.2d 244 (Del. 2000)), *aff'd*, 38 A.3d 1254 (Del. 2012) ...................*passim*

12

*Bader v. Anderson,*

13

179 Cal.App.4th 775 (2009) .................................................8, 9, 10, 12

14

*Beam, etc. v. Stewart,*

15

845 A.2d 1040 (Del. 2004) .................................................................. 8

16

*Blaustein v. Lord Balt.Cap. Corp.,*

17

84 A.3d 954, 958 (Del. 2014) ........................................................... 16

18

*Charter Township, etc. v. Martin,*

219 Cal.App.4th 924 (2013) ......................................................*passim*

19

*Guttman v. Huang,*

20

823 A.2d 492 (Del. Ch. 2003) .......................................................... 13

21

*Hartsel v. Vanguard Group, Inc.,*

22

2011 WL 2421003 (Del. Ch. June 15, 2011) ...................................... 9

23

*In re Coca-Cola Enters., Inc.,*

24

2007 WL 3122370 (Del. Ch. Oct. 17, 2007), *aff'd*, 654 A.2d 910 (Del.

25

2008) .................................................................................................. 3

26

*In re J.P. Morgan Chase & Co. Shareholder Litig.,*

906 A.2d 808 (Del. Ch. 2005) .................................................... 19, 20

27

*Katz v. Chevron Corp.,*

28

22 Cal.App.4th 1352 (1994) ............................................................. 25

-v-

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Leyte-Vidal v. Semel*,
  220 Cal.App.4th 1001 (2013) .................................................................. 8

*Oakland Raiders v. Nat'l Football League*,
  93 Cal.App.4th 572 (2001) .................................................................. 10

*Rales v. Blasband*,
  634 A.2d 927 (Del. 1993) ............................................................. 9, 10, 11

*Shields v. Singleton*,
  15 Cal.App.4th 1611 (1993) ............................................................. 10, 16

*Telxon Corp. v. Meyerson*,
  802 A.2d 257 (Del. 2002) ...................................................................... 24

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
  906 A.2d 168 (Del. Ch. 2006) ......................................................... 14, 15

**STATE STATUTES**

Cal. Corp. Code §204(a)(10) ........................................................ 12, 17, 22

**FEDERAL RULES**

F.R.Civ.P. Rule 12(b)(6) ........................................................................ 19

F.R.Civ.P. Rule 23.1 ...................................................................... 1, 7, 8

**TREATISES**

15 Cal.Jur.3d *Corporations*, §525 ........................................................ 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT.

In this shareholder derivative action seeking to recover damages on behalf of Nominal Defendant Edison International ("EIX"), Plaintiff sues the individual Defendants, who are officers and directors of EIX.  Plaintiff asserts that the individual Defendants breached fiduciary duties of loyalty and good faith they owed to EIX by allegedly knowingly causing EIX's wholly-owned indirect subsidiary Edison Mission Energy ("EME") to make certain "dividend" and "tax sharing" payments to other EIX-affiliated entities, when, Plaintiff contends, no such payments were owed by EME, and Plaintiff alleges that these allegedly "improper" payments to EIX caused EIX to sustain damages.  Plaintiff's breach of fiduciary duties claim and this derivative action should be dismissed for Plaintiff's failure to have made a pre-suit demand on EIX's board of directors.

The key principle underlying a court's analysis of a pleading asserting a derivative claim is that the corporation's directors are entitled to a presumption that they were faithful to their duties.  F.R.Civ.P. Rule 23.1 therefore requires that "'[a] shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile." *Hawaii Laborers Pens. Fund, etc.*, *v. Farrell*, 2007 WL 5255035, at *3 (C.D. Cal. Aug. 23, 2007) (Wright, J.) (quoting *In re Silicon Graphics, Inc., Sec. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999)).  The purpose of pre-suit demand is to ensure that the shareholder affords the corporation an opportunity to address an alleged wrong without litigation, to decide whether to invest the resources of the corporation in litigation, and to control any litigation that does occur.  For this reason, the requirement that a derivative plaintiff make a demand is excused only under "extraordinary conditions."

"[T]o evaluate . . . [a plaintiff's] demand futility claim, the court must be

apprised of facts specific to *each director* from which it can conclude that the particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff."  *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008) (internal quotes and citation omitted; emphasis added).  To show demand futility, a plaintiff must allege with particularity facts showing that a majority of the board lacks independence or is otherwise incapable of validly exercising its business judgment.  When a plaintiff has not made a pre-suit demand and the complaint fails adequately to plead "futility," the complaint should be dismissed.

Here, Plaintiff does not allege that she made a demand on EIX's board of directors before bringing this lawsuit, instead asserting a demand would have been "futile."  But Plaintiff does not come close to satisfying the requirement for pleading "with particularity" facts as to "each director" showing that pre-suit demand should be excused.  Indeed, Plaintiff does not allege *any* facts showing involvement of *any* director Defendant in a decision for EME to make the dividend payments or the tax sharing payment, or *any* facts that any director even knew about, let alone acted in a way to bring about, the dividend or tax payments.  Moreover, "[d]emand will be excused only if the plaintiff's allegations show that the defendants' actions were so egregious that a substantial likelihood of director liability exists."  *Silicon Graphics*, 183 F.3d at 990 (internal quotes and citation omitted).  Here, Plaintiff has not pled *any* facts showing that *any* director faces any liability on Plaintiff's claims.  Plaintiff therefore has failed to plead "with particularity" facts showing that her failure to have made a demand on EIX's board of directors is excused.  In addition, Plaintiff's claim based upon allegedly improper dividend payments, which were made and publicly disclosed six years before this action was filed, is clearly time barred.  For all of these reasons, this action should be dismissed.

## II.   PLAINTIFF'S ALLEGATIONS AND CLAIMS.

### A.   The Parties.

Nominal Defendant EIX is a California corporation that, through its

subsidiaries, generates and distributes electric power and invests in transportation infrastructure and energy assets.  ¶20.[1]  The individual Defendants are officers and/or directors of EIX.  ¶¶ 21-27, 29-31, 28, 32-35.  At the time Plaintiff filed this lawsuit, non-Defendant Taucher was also a member of EIX's Board of Directors (and remains a director today).  ¶121.

Plaintiff Natalie Gordon is a shareholder of EIX.  ¶19.  She is a frequent plaintiff in shareholder derivative and securities class action litigation, having been the named plaintiff in at least five other such lawsuits in which she was represented by the same law firm representing her in this action.  These other lawsuits all have been dismissed.[2]

**B.**     **Plaintiff Challenges "Dividend" And "Tax Sharing" Payments She Alleges EIX Improperly Caused Edison Mission Energy To Make.**

Non-party EME is an indirect, wholly-owned subsidiary of EIX that operates as an independent power producer.  ¶2.  EME filed for bankruptcy on December 17, 2012.  ¶94.

Although Plaintiff generally criticizes the relationship between EIX and EME, asserting EIX's purported "domination and control" of its wholly-owned indirect subsidiary, her breach of fiduciary duties claim (the only claim alleged) is

---

[1] All paragraph citations are to the numbered paragraphs of the Amended Complaint.  The facts alleged in the Amended Complaint are assumed to be true for the purpose of this Motion only.

[2] *See Gordon v. Goodyear, Inc.*, 2012 WL 2885695, at *1 (N.D. Ill. July 13, 2012) (dismissed for plaintiff's failure to have made pre-suit demand); *Gordon v. Royal Bank of Scotland Group, PLC*, No. 09 CV 704, U.S. Dist. Ct., S.D.N.Y., filed Jan. 25, 2009 (dismissed with prejudice on defendants' motions); *Gordon v. Hastings*, No. C-12- 00707, U.S. Dist. Ct., N.D. Cal., filed Feb. 13, 2012) (dismissed by plaintiff); *Gordon v. Cisco Sys., Inc.*, No. 1-12-CV-233209, Cal. Super. Ct., Santa Clara County, filed Sept. 28, 2012 (dismissed with prejudice pursuant to stipulation); *Gordon v. Symantec, Corp*., Cal. Super. Ct., Santa Clara County, No. 1-12-CV-231541, filed Sept. 4, 2012 (dismissed with prejudice).  In addition, Plaintiff in this action has also been a plaintiff in other shareholder litigation in which she was represented by other counsel, including the following lawsuits:  *e.g.*, *In re Coca-Cola Enters., Inc.*, 2007 WL 3122370, at *1 (Del. Ch. Oct. 17, 2007), *aff'd*, 654 A.2d 910 (Del. 2008) (dismissed as time-barred); *Gordon v. Hicks*, No. 3:05-cv-01216-CFD, U.S. Dist. Ct., Conn., filed Aug. 2, 2005 (dismissed by plaintiff).

based on her challenge to two specific transactions involving EME.  As to these transactions, Plaintiff contends that the individual Defendants breached fiduciary duties they owed to EIX as its officers and directors, and Plaintiff contends these transactions caused EIX to suffer damages Plaintiff is entitled to recover on behalf of EIX.  ¶1.  These two transactions involve:  (1) payment of $924 million in dividends Plaintiff alleges EIX caused EME to pay in 2007; and (2) a $183 million "tax sharing payment" Plaintiff alleges EIX caused EME to pay in September 2012.

### 1.   EME's $924 million in dividend payments.

Mission Energy Holding ("MEHC") is an indirect subsidiary of EIX and the parent company of EME.  ¶¶ 44, 45.  In 2007, MEHC had outstanding promissory notes due on which it was the sole obligor.  ¶¶ 55, 56.  In May 2007, EME itself completed a private offering of $1.2 billion of senior notes.  ¶60.  In January and May 2007, EIX caused EME to use the net proceeds of this offering, together with cash that EME had on hand, to pay a total of $924 million in dividends to MEHC in order that MEHC could pay-off its own notes.  ¶¶ 55-59.  According to Plaintiff, these dividends "were unfair to EME because it received no consideration from MEHC from this exchange" (¶63), and, according to Plaintiff, EME's payment of these dividends to MEHC "severely weakened EME's financial condition."  ¶59.

### 2.   EME's $183 million "tax sharing payment."

EIX, EME and other Edison-affiliated entities filed a single consolidated tax return that enabled this "Consolidated Group" to offset the taxable income of one member with losses from one another.  ¶74.  The terms apportioning tax expenses and benefits among the Consolidated Group were set forth in certain "Tax Sharing Agreements."  *Id*.  As described by Plaintiff,

> Pursuant to the Tax Sharing Agreements, the taxable gains and losses
> of each subsidiary are usually calculated independently, but companies
> with gains who owe taxes are able to offset those gains with the losses
> of other companies who are party to the Tax Sharing Agreements.

1     Generally, this results in subsidiaries with gains being required to make

2     payments to members of the group with operating losses as a fee for the

3     tax payment offsets.  *Id*.

4     According to Plaintiff, from 2005 to 2008, EME was a net provider of EIX's

5 earnings and generated taxable income and tax obligations for which it made

6 payments to EIX under the Tax Sharing Agreements.  ¶78.  However, by 2009,

7 EME was performing poorly and had net losses.  *Id*.  Under the Tax Sharing

8 Agreements, when filing tax returns EIX used EME's net losses to shield otherwise

9 taxable income generated by other members of the Consolidated Group.  *Id*.

10     On September 27, 2012, a few months before EME filed for bankruptcy in

11 December 2012, EIX caused EME to pay EIX approximately $183 million in a tax

12 sharing payment, which EIX paid to its indirect subsidiary Southern California

13 Edison ("SCE").  ¶79.  Plaintiff alleges "[t]he sole purpose of this transaction was to

14 funnel cash to SCE and the EIX enterprise at the expense of EME and its creditors"

15 (¶81) and "[t]here was no credible reason for EIX to cause EME to make this

16 payment under the Tax Sharing Agreement."  ¶80.

17     After causing EME to make the tax sharing payment, EIX terminated the tax

18 sharing agreements as to EME effective December 31, 2013.  ¶¶ 89, 90.

19     **C.**    <u>**EME's Bankruptcy And The Settlement Entered Into By EIX**</u>.

20     After EME filed for bankruptcy in December 2012, in January 2013, the

21 bankruptcy court entered an order authorizing the EME debtors (EME and certain of

22 its subsidiaries) and its Creditors' Committee to conduct an examination of EIX and

23 related parties, to investigate potential claims against EIX.  ¶97.

24     In July 2013, the Creditors' Committee filed a motion in bankruptcy court

25 requesting the right to sue EIX to recover damages on behalf of the EME entities,

26 claiming EIX had improperly drained EME of money.  ¶99.  In connection with this

27 motion, the Creditors' Committee filed a proposed draft complaint naming as

28 defendants each of the individual defendants in this action.  ¶100.

1      Under EME's proposed plan of reorganization, almost all of EME's assets are

2   to be sold to NRG Energy, Inc., for $2.64 billion.  ¶11.  Plaintiff alleges that, upon

3   approval of the plan, all assets and liabilities of EME that are not otherwise

4   discharged in the bankruptcy or transferred to NRG will be transferred to a newly

5   formed trust or entity under the control of EME's existing creditors.  ¶¶ 13, 107.

6      On February 18, 2014, after EME proposed its plan of reorganization, but

7   before plan confirmation, EIX, EME and a majority of EME's creditors entered into

8   a "Settlement Agreement" that resolves all claims between the EME entities and

9   EIX related to the EME bankruptcy.  ¶104.  Under the Settlement, EME will

10  continue to exist as an indirect wholly-owned subsidiary of EIX, and EIX will again

11  consolidate EME with other Edison entities for income tax purposes.  ¶107.

12  According to Plaintiff, "EME is expected to have an estimated $1.2 billion of

13  unused tax attributes, mainly net operating losses and tax credits, once EME's

14  reorganization is completed."  ¶13.  Pursuant to the Settlement Agreement, EIX will

15  pay EME's creditors 50% of the amount of EME's $1.2 billion in unused "tax

16  attributes" (plus interest on deferred payments) in the aggregate amount of $634

17  million.  ¶¶ 108, 109.  Plaintiff alleges that "[a]s a consequence of unlawfully

18  depleting EME by the Dividends and the Tax Sharing Payment, EIX had no choice

19  but to agree to the Settlement Agreement, which now mandates EIX to share EME's

20  $1.2 billion tax benefits on a 50/50 basis with the [EME] Reorganization Trust

21  resulting in a payment of $634 million to EME's creditors."  ¶111.

22      Based on these allegations of the dividend and tax sharing payments, Plaintiff

23  brings this lawsuit as a derivative action on behalf of Nominal Defendant EIX,

24  alleging the individual Defendants "breached their fiduciary duties of loyalty and

25  good faith by knowingly engaging in the illicit scheme against EME alleged herein,"

26  which allegedly has caused EIX to sustain damages.  ¶¶ 1, 15, 117, 118, 123-126.

27  **III.   ARGUMENT.**

28      "A shareholder derivative suit is a uniquely equitable remedy in which a

shareholder asserts on behalf of a corporation a claim belonging not to the shareholder, but to the corporation." *Laborers' Local v. Intersil*, 868 F.Supp. 2d 838, 844 (N.D. Cal. 2012).  "To accommodate the unique nature of a derivative action, while still permitting the individual shareholder to protect the interests of the corporation, 'equity courts established as a precondition . . . that the shareholder demonstrate "that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions."'" *In re Amer. Apparel, Inc. Shareholder Deriv. Litig.*, 2012 WL 9506072, at *20 (C.D. Cal. July, 31, 2012) (Morrow, J.) (quoting *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 96 (1991) (quoting *Ross v. Bernhard,* 396 U.S. 531, 534 (1970))).  This "precondition" for a derivative lawsuit is set forth in F.R.Civ.P. Rule 23.1.

"Federal Rule of Civil Procedure 23.1(a) imposes a heightened pleading standard when 'one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce.'" *Iron Workers Local No. 25, etc.*, *v. Bogart*, 2012 WL 2160436, at *2 (N.D. Cal. June 13, 2012) (quoting Rule 23.1).  Rule 23.1 requires that "'[a] shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile." *Farrell*, 2007 WL 5255035, at *3 (quoting *Silicon Graphics*, 183 F.3d at 989).

When a plaintiff has not made a pre-suit demand and the complaint fails adequately to plead "futility," the complaint should be dismissed "with prejudice." *Lucas v. Lewis*, 428 Fed. Appx. 694, 696 (9th Cir. 2011) ("Because Lucas has not satisfied the demand requirements prior to filing suit, the district court's decision to dismiss with prejudice was appropriate."); *Silicon Graphics*, 183 F.3d at 991 (Where "it is clear that [plaintiff] could not have amended his complaint to show that it would have been futile to make a demand upon the directors, . . . dismissal with

1  prejudice was appropriate.")

2      Plaintiff does not allege that she made a demand on EIX's board of directors

3  before bringing this lawsuit, asserting a demand would have been "futile."  ¶120.

4  Therefore, the question to be decided on this motion is if Plaintiff has pled "with

5  particularity" facts showing that a pre-suit demand on EIX's board of directors

6  would have been "futile," so that her failure to have made a demand is excused.

7      Although Rule 23.1 governs a derivative suit filed in federal court, it "does

8  not establish the circumstances under which demand would be futile."  *Farrell*, 2007

9  WL 5255035, at *3.  "For these standards, the Court turns to the law of the state of

10  incorporation" of the nominal defendant.  *Id.*  EIX is a California corporation (¶20),

11  "so California state law establishes the circumstances under which demand would

12  be futile."  *In re Asyst Tech., Inc. Deriv. Litig.*, 2008 WL 2169021, at *2 (N.D. Cal.

13  May 23, 2008).  However, California courts recognize that California law "is

14  identical to Delaware law on the demand requirement."  *Potter*, 546 F.3d at 1057.

15  Therefore, "California courts "find instructive certain cases decided in Delaware . . .

16  on the subjects of shareholder derivative suits and demand futility."  *Bader v.*

17  *Anderson*, 179 Cal.App.4th 775, 791 n.5 (2009).

18      **A.  <u>The Standard For Pleading "Demand Futility".</u>**

19      "The 'key principle' underlying judicial analysis of a pleading asserting a

20  derivative action is 'that the directors are entitled to a presumption that they were

21  faithful to their fiduciary duties.'"  *Leyte-Vidal v. Semel*, 220 Cal.App.4th 1001,

22  1008-09 (2013) (quoting *Beam, etc. v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004)).

23  "The purpose of pre-suit demand is to [en]sure that the stockholder affords the

24  corporation the opportunity to address an alleged wrong without litigation, to decide

25  whether to invest the resources of the corporation in litigation, and to control any

26  litigation [that] does occur."  *Id.* at 1009 (internal quotes and citation omitted;

27  bracketed text original).  For this reason, the requirement that a derivative plaintiff

28  make a demand is excused only under "extraordinary conditions."  *Bader*, 179

1   Cal.App.4th at 789 (internal quotes and citation omitted).  A determination that a

2   plaintiff has failed to allege facts showing a demand would have been "futile" is

3   reviewed under an "abuse of discretion" standard.  *Potter*, 546 F.3d at 1056.

4       [D]emand futility must be determined on a claim-by-claim basis."  *Taylor v.*

5   *Kissner*, 893 F.Supp.2d 659, 666 (D. Del. 2012).  The test for whether a plaintiff has

6   pled particularized facts showing demand futility depends on the nature of the claim

7   alleged.  If the claim challenges "contested board action with respect to a specific

8   transaction or conscious business decision," the "*Aronson*" test applies.  *Hartsel v.*

9   *Vanguard Group, Inc.*, 2011 WL 2421003, at *20 (Del. Ch. June 15, 2011) (citing

10  *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm*

11  *v. Eisner*, 746 A.2d 244 (Del. 2000)), *aff'd*, 38 A.3d 1254 (Del. 2012).  *See Rales v.*

12  *Blasband,* 634 A.2d 927, 933 (Del. 1993) ("The essential predicate for the *Aronson*

13  test is the fact that a *decision* of the board of directors is being challenged in the

14  derivative suit."  (emphasis in original)).  But "[a] different test applies where the

15  directors did *not* make a decision."  *Farrell*, 2007 WL 5255035, at *3 (emphasis in

16  original).  "[W]here the subject of a derivative suit is not a board decision but rather

17  a board's inaction leading to a violation of its oversight duties," the "*Rales*" test

18  applies instead of the *Aronson* test.  *Hartsel*, 2011 WL 2421003, at *20.

19      The "*Aronson*" Test.  Under the *Aronson* test, when a complaint alleges board

20  approval of an allegedly improper transaction, the test for determining demand

21  futility is whether "under the particularized facts alleged, a reasonable doubt is

22  created that:  (1) the directors are disinterested and independent, and (2) the

23  challenged transaction was otherwise the product of a valid exercise in business

24  judgment."  *Bader*, 179 Cal.App.4th at 790-91.  This "two-prong test under *Aronson*

25  is disjunctive."  *Id.* at 791 (citing *Brehm*, 746 A.2d at 256).  As the Court explained

26  in *Charter Township, etc. v. Martin*, 219 Cal.App.4th 924, 935 (2013),

27      If a plaintiff fails to satisfy the first prong of *Aronson,* there is a

28      presumption that the board's actions were the product of a valid

1   exercise of business judgment.  [ ]  Under the second prong of *Aronson,*

2   plaintiffs must plead particularized facts sufficient to raise (1) a reason

3   to doubt that the action was taken honestly and in good faith or (2) a

4   reason to doubt that the board was adequately informed in making the

5   decision.  (internal quotes and citations omitted.)

6   The "*Rales*" Test.  However, when a complaint alleges board inaction, the test

7   is "'whether the board that would be addressing the demand can impartially consider

8   its merits without being influenced by improper considerations.'"  *Bader*, 179

9   Cal.App.4th at 791 (quoting *Rales*, 634 A.2d at 934)).  "Thus, under *Rales,* to prove

10  futility, a plaintiff must show that a majority of directors were not independent or

11  disinterested . . . ." *Farrell*, 2007 WL 5255035, at *3.

12        In this case, the "*Aronson*" test applies to determine if Plaintiff has adequately

13  pled demand futility, because Plaintiff alleges that individual defendants who were

14  EME Board members at the time of each transaction "knowingly" caused EME to

15  make the allegedly improper dividend payments and the tax sharing payment.  ¶¶

16  15, 63, 125.  *See Bader*, 179 Cal.App.4th at 797 (Because plaintiff's claims are

17  purportedly "based upon a 'conscious decision by directors to act,'" the *Aronson* test

18  applies (quoting *Rales*, 634 A.2d at 933)).

19        In pleading demand futility under the *Aronson* test, "general, conclusory facts

20  are insufficient."  *Oakland Raiders v. Nat'l Football League*, 93 Cal.App.4th 572,

21  587 (2001).  Instead, "'the court must be apprised of facts specific to each director

22  from which it can conclude that the particular director could or could not be

23  expected to fairly evaluate the claims of the shareholder plaintiff.'"  *Potter*, 546 F.3d

24  at 1058 (quoting *Shields v. Singleton*, 15 Cal.App.4th 1611, 1622 (1993)).  "[B]are

25  allegations of director wrongdoing without factual support cannot excuse demand."

26  *Shields*, 15 Cal.App.4th at 1622.

27        This lawsuit should be dismissed because Plaintiff has not pled facts showing

28  demand futility under the *Aronson* test.  In any event, because the first prong of the

*Aronson* test (whether the directors are disinterested and independent) is like the *Rales* test (whether the board addressing the demand can impartially consider its merits without being influenced by improper considerations), Plaintiff has not pled demand futility under either test.  "[The policy justifications for each test points the Court toward a similar analysis.  Under either test the Court must determine a director's interest and independence."  *Farrell*, 2007 WL 5255035, at *4 n.10.

### B.    <u>Plaintiff Has Not Pled Facts Showing Demand Futility</u>.

1.    ***Plaintiff has not pled particularized facts showing demand futility with respect to her claim based on the dividend payments.***

(a)    <u>Plaintiff has not satisfied the first *Aronson* prong by alleging particularized facts showing the director defendants face a substantial likelihood of liability with respect to the dividend payments.</u>

"At the pleading stage, Board independence and compliance with the business judgment rule are presumed."  *Silicon Graphics*, 183 F.3d at 990.  "Demand will be excused only if the plaintiff's allegations show the defendants' actions 'were so egregious that a substantial likelihood of director liability exists.'"  *Id.* (quoting *Aronson*, 473 A.2d at 815).

Plaintiff contends that pre-suit demand should be excused for her claim based on the dividend payments because seven of the twelve EIX director defendants (Cordova, Freeman, Olson, Sutton, Nogales, Schlosberg and Craver) "are substantially likely to be held liable" for "causing EME to pay the Dividends . . . ."[3] ¶122(a).  According to Plaintiff, these director defendants are substantially likely to be held liable because the dividend payments "were unfair to EME because it received no consideration from MEHC from this exchange" (¶63) and EME's payment of the dividends "severely weakened EME's financial condition."  ¶59.

---

[3] Plaintiff makes no allegation relating to the making of the dividend payments against EIX's five other directors at the time this action was filed:  Bindra, Taylor, Chang, White and Tauscher.  *See* ¶¶ 121, 122(a).

1    In assessing if a plaintiff has pled a "substantial likelihood of liability" to

2  excuse pre-suit demand with respect to a transaction, "the mere threat of personal

3  liability for approving a questioned transaction, standing alone, is insufficient to

4  challenge either the independence or disinterestedness of directors."  *Charter*

5  *Township*, 219 Cal.App.4th at 936 (internal quotes and citation omitted).

6  "Therefore, '[a] plaintiff may not bootstrap allegations of futility' by pleading

7  merely that 'the directors participated in the challenged transaction or that they

8  would be reluctant to sue themselves.'"  *Bader*, 179 Cal.App.4th at 793 (quoting *In*

9  *re Sagent Tech., Inc., Deriv. Litig.*, 278 F.Supp.2d 1079, 1089 (N.D. Cal. 2003)).

10  *See also Bader*, 179 Cal.App.4th at 793 ("[T]he fact that the board approved the

11  challenged transaction, of itself, does not establish demand futility under the theory

12  that such approval 'automatically connotes "hostile interest" and "guilty

13  participation" by directors.'" (quoting *Aronson*, 473 A.2d at 814)).

14    In addition, where a corporation's articles of incorporation contain an

15  exculpatory provision that "insulates its directors from liability," "a serious threat of

16  liability may only be found to exist if the plaintiff pleads a non-exculpated claim

17  against the directors based on particularized facts."  *Brown v. Moll*, 2010 WL

18  2898324, at *4 (N.D. Cal. July 21, 2010) (internal quotes and citation omitted).

19  Here, EIX's Articles of Incorporation (Defendants' Request for Judicial Notice

20  ("Ds' RJN"), Ex. A), "Fifth" ¶1, state that "[t]he liability of directors of the

21  corporation for monetary damages shall be eliminated to the fullest extent

22  permissible under California law."[4]  "California law" – *Corporations Code*

23  §204(a)(10) – provides, in pertinent part, that a corporation may "eliminat[e] or

24  limit[] the personal liability of a director for monetary damages in an action brought

25  by or in the right of the corporation for breach of a director's duties to the

27  [4] A court may take judicial notice of a corporation's articles of incorporation.  *Rhodes v. Sutter*

28  *Health*, 2012 WL 662462, at *3 (E.D. Cal. Feb. 28, 2012).

corporation and its shareholders," except that a director's liability may not be eliminated or limited

> (i) for acts or omissions that involve intentional misconduct or a knowing and culpable violation of law, (ii) for acts or omissions that a director believes to be contrary to the best interests of the corporation or its shareholders or that involve the absence of good faith on the part of the director, (iii) for any transaction from which a director derived an improper personal benefit, (iv) for acts or omissions that show a reckless disregard for the director's duty to the corporation or its shareholders in circumstances in which the director was aware, or should have been aware, in the ordinary course of performing a director's duties, of a risk of serious injury to the corporation or its shareholders, (v) for acts or omissions that constitute an unexcused pattern of inattention that amounts to an abdication of the director's duty to the corporation or its shareholders, . . . .

Accordingly, Plaintiff can establish that a director defendant faces a "substantial likelihood of liability" *only* if she has pled "particularized facts" showing such liability on a claim for which the director has not been exculpated. *Brown*, 2010 WL 2898324, at *4; *Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003) ("a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts.") Plaintiff has not pled facts, let alone "particularized facts," showing the seven director defendants she identifies (¶122(a)) face a "substantial likelihood of liability" as to the dividend payments.

<u>First</u>, Plaintiff's allegations that EME received no consideration for its dividend payments to MEHC, and the payments benefited only MEHC, does not show these director defendants face a substantial likelihood of liability because the allegations do not support that any director of EIX (or of EME) engaged in any

1  misconduct.

2       Needless to say, *any* dividend from a subsidiary to its owner benefits the

3  owner rather than the subsidiary.  However, except where a subsidiary is insolvent,

4  "[w]hen one company wholly owns another, the directors of the parent and the

5  subsidiary are obligated to manage the affairs of the subsidiary in the best interests

6  only of the parent and its shareholders."  *Aviall, Inc., v. Ryder Syst., Inc.*, 913

7  F.Supp. 826, 832 (S.D.N.Y. 1996), *aff'd on other grounds*, 110 F.3d 892 (2d Cir.

8  1997).  "That doing so may not always involve maximizing the subsidiary's

9  economic value is of little concern."  *In re Teleglobe Comm. Corp.*, 493 F.3d 345,

10  367 (3rd Cir. 2007).  As a result, "those who operate the parent company owe no

11  fiduciary duties to the wholly-owned subsidiary."  *Aviall, Inc.*, 913 F.Supp. at 832.

12  *Accord*, *Richardson v. Rel. Nat'l Indem. Co.*, 2000 WL 284211, at *12 (N.D. Cal.

13  Mar. 14, 2000) (directors of a subsidiary corporation owe duty to parent corporation

14  and its shareholders, not subsidiary).  "Thus, loading debt on a solvent subsidiary to

15  maximize the parent's value is not a breach of fiduciary duty to the subsidiary."

16  *Newsome v. Gallacher*, 722 F.3d 1257, 1266 (10th Cir. 2013).  *Accord*, *Trenwick*

17  *Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 192 (Del. Ch. 2006)

18  (rejecting claim parent corporation engages in misconduct "when a parent

19  corporation use[s] the asset value of its wholly-owned subsidiaries to help it finance

20  and absorb the down-side of the parent's larger business strategy.")

21       These rules apply here and establish that Plaintiff has not alleged

22  particularized facts showing that any director defendant breached any duty or could

23  face any liability, let alone a "substantial likelihood of liability," by allegedly

24  causing EME to make the dividend payments to benefit EIX's indirect subsidiary

25  MEHC.  Plaintiff has not alleged that any director faces a substantial likelihood of

26  liability, because (among other reasons) Plaintiff has not alleged particularized facts

27  showing that EME was "insolvent" at the time of the dividend payments in 2007.

28       While Plaintiff at one point alleges in conclusory fashion that EME was

1    "insolvent" at the time of the dividend payments (¶57), she simultaneously alleges

2    that EME was *not* insolvent when the payments were made.  ¶4 ("nearly insolvent"),

3    ¶64 ("on the brink of insolvency").  Moreover, plaintiff admits that even after the

4    dividend payments EME's public financial statements reflected total assets ($7.3

5    billion) greatly in excess of its total liabilities ($5.3 billion).  ¶55.  Therefore, after

6    the dividend payments had been made, EME still had shareholder equity of almost

7    $2 billion, far from an "insolvent" company.  While Plaintiff also alleges that in

8    December 2006, EME had an "agreement in principle" to reduce emissions at its

9    Midwest Generation's Illinois plant, which would have entailed capital expenditures

10   estimated to be in the range of $2.7 to $3.4 billion (¶54), these potential

11   expenditures were "estimated" only and were to be incurred over a ten-year period

12   from 2008 to 2018, with the bulk of the estimated expenditures ($2.2 to $2.9 billion)

13   to be made well in the future between 2012 and 2018.  Ds' RJN, Ex. B (EME 2007

14   Form 10-K) at pp. 79).[5]  These future, potential expenditures were not reflected as a

15   liability on EME's 2007 audited financial statements (*id.* at pp. 39-40, 110), and the

16   audited financial statements did not include a "going concern" qualification (*id.* at

17   107), as they certainly would have if EME was insolvent.[6]

18        Plaintiff's failure to plead particularized facts showing EME was insolvent at

19   the time of these dividend payments precludes her from arguing the director

20   defendants had any duty other than to manage EME's assets in the interests of its

21   parent EIX.  *Trenwick Am. Litig. Tr.*, 906 A.2d at 195 ("If a plaintiff seeks to state a

22

23   [5] Plaintiff references this 2007 10-K in her Amended Complaint.  ¶¶ 55, 60.  "On considering a
     motion to dismiss, judicial notice of the full text of documents referenced in a complaint is proper
24   under the doctrine of incorporation by reference."  *Farrell*, 2007 WL 5255035, at *3.  In addition,
     filings with the SEC are subject to judicial notice on a motion to dismiss.  *Dreiling v. American*
25   *Exp. Co.*, 458 F.3d 942, 946 (9th Cir. 2006).

26   [6] A "going concern" qualification is used when an auditor has "substantial doubt about the entity's
     ability to continue as a going concern for a reasonable period of time, not to exceed one year
27   beyond the date of the financial statements being audited . . . ."  *Ziemba v. Cascade Intern., Inc.*,
     256 F.3d 1194, 1208 n.9 (11th Cir. 2001).

28

1   claim premised on the notion that a corporation was insolvent and that the directors

2   of the corporation were therefore obligated to consider the corporation's creditors,

3   as an object of their fiduciary beneficence, the plaintiff must plead facts supporting

4   an inference that the corporation was in fact insolvent at the relevant time.").

5       <u>Second</u>, even if a director of EIX owed some duty to EME (or its creditors)

6   with respect to EME's dividend payments to MEHC, Plaintiff has not alleged

7   particularized facts showing any director faces a "substantial likelihood of liability"

8   for having breached such a duty.  "[T]o evaluate the demand futility claim, the court

9   must be apprised of facts specific to each director from which it can conclude that

10  the particular director could or could not be expected to fairly evaluate the claims of

11  the shareholder plaintiff." *Potter*, 546 F.3d at 1058 (internal quotes and citation

12  omitted).  "[A] plaintiff must allege with particularity that a majority of the board

13  lacks independence or is otherwise incapable of validly exercising its business

14  judgment." *Blaustein v. Lord Balt. Cap. Corp.*, 84 A.3d 954, 958 (Del. 2014).

15      Plaintiff fails to plead particularized facts raising a reasonable doubt that any

16  director defendant, let alone a majority of the Board, faces a substantial likelihood

17  of liability as a result of the dividend payments.  Indeed, Plaintiff does not allege

18  facts showing involvement of any director defendant in a decision for EME to make

19  the dividend payments or facts that any director even knew about, let alone acted in

20  a way to bring about, the dividend payments.  *See, e.g.*, ¶57 (referring to what "EIX"

21  allegedly "knew"); ¶63 (conclusory allegation director defendants "knowingly

22  burdened EME with roughly $924 million in debt.")  There are also no facts alleged

23  setting out what each EIX director knew about EME's financial condition at the

24  time of the dividend payments.  Such "bare allegations of director wrongdoing

25  without factual support cannot excuse demand." *Shields*, 15 Cal.App.4th at 1622.

26  *See In re Verisign, Inc., Deriv. Litig.*, 531 F.Supp.2d 1173, 1192-93 (N.D. Cal.

27  2007) (rejecting argument that the plaintiff's "conclusory assertion that all the

28  directors 'authorized, approved, [or[ ratified' the backdating" was sufficient to show

1  a majority of the directors faced a "substantial likelihood of liability."); *Silicon*

2  *Graphics*, 183 F.3d at 990 ("a general allegation that the Board participated in . . .

3  [a] fraudulent scheme" is "insufficient to demonstrate that the Board engaged in

4  conduct that resulted in a substantial risk of personal liability.")

5       Moreover, because Plaintiff has not alleged any facts showing any

6  involvement by any director defendant in a decision for EME to make the dividend

7  payments, Plaintiff certainly has not alleged particularized facts showing a

8  substantial likelihood of director liability on the part of any director on a *non-*

9  *exculpated* claim.  *See* above at pp. 12:22-13:15, quoting Cal. *Corp. Code*

10  §204(a)(10).  For this reason as well, Plaintiff has not pled that any director faces a

11  "substantial likelihood of personal liability" with respect to the dividend payments.

12  *Brown*, 2010 WL 2898324, at *4 (internal quotes and citation omitted).

13       <u>Third</u>, Plaintiff also has not alleged facts showing that any director faces a

14  "substantial likelihood of liability" on her breach of fiduciary duties claim based on

15  the dividend payments because any such claim is time-barred.  The dividend

16  payments were made in 2007.  ¶¶ 55-59.  Plaintiff did not file suit until February 11,

17  2014.  California law provides a four-year limitations period on her breach of

18  fiduciary duties claim, which "begins to run when plaintiff[] discovered, or in the

19  exercise of reasonable diligence could have discovered, that facts had been

20  concealed."  *In re Brocade Comm. Systems, Inc., Deriv. Litig.*, 615 F.Supp.2d 1018,

21  1036-37 (N.D. Cal. 2009) (internal quotes and citation omitted).

22       As Plaintiff's own pleading makes clear, the facts underlying her claim that

23  the director defendants are liable for breach of fiduciary duties based on the

24  dividend payments – her allegations the payments were made by EME from the "net

25  proceeds" of its own private offering and its own "cash on hand" and they were

26  made to enable MEHC to retire its own debt (¶60), and EME's financial condition at

27  the time of the dividend payments (¶55) – were disclosed in EME's fiscal year 2007

28  form 10-K filed with the SEC in February 2008.  *See* Ds' RJN, Ex. B at pp. 34, 39-

40, 108-110.  Plaintiff was therefore on notice of these facts no later than February 2008.  *Menowitz v. Brown*, 991 F.2d 36, 42 (2d Cir.1993) ("plaintiffs were placed on inquiry notice of their claims by the very SEC-mandated disclosure documents they rely upon in their complaints."); *In re Syntex Corp. Sec. Litig.*, 855 F.Supp. 1086, 1099 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996) (Same, citing *Menowitz*). Indeed, the intent to use the proceeds from newly-issued EME bonds for a dividend to retire MEHC debt was disclosed even earlier, in public SEC filings in advance of the bond issuance in May 2007.  *See* Ds' RJN, Ex. C (EME Form 8-K and Exhibit 99.1), filed 5/4/2007).[7]  As Plaintiff did not file this action until 2014, any claim based on the dividend payments is time-barred.  15 Cal.Jur.3d *Corporations*, §525 (online database base updated Feb. 2014) ("The statute of limitations begins to run on the right of each shareholder to initiate a derivative action when the shareholder learns of facts constituting a cause of action or learns of facts that should cause a reasonable person to make an investigation that would disclose the existence of the cause of action.")

Because any fiduciary duty claim based on the dividend payments is time-barred, no director defendant faces a "substantial likelihood of liability" based on the payments.  *In re Keithley Instr., Inc., Deriv. Litig.*, 599 F.Supp.2d 875, 901 (N.D. Ohio 2008) ("If, as a matter of law, based on the running of the applicable statute of limitation or repose, the individual faced no possibility of liability because any claims against the individual were time-barred, then surely the individual cannot be said to face a 'substantial likelihood' of liability."); *In re Verisign, Inc., Deriv. Litig.*, 531 F.Supp.2d at 1192 (Time-barred claim cannot be used "as a basis for alleging demand futility.)[8]

---

[7] This is telling not only on the statute of limitation point, but also because the purchasers of those billions of dollars in new bonds obviously did not believe that EME was being rendered insolvent.

[8] Also, although Plaintiff purports to allege only a single "Count I" for breach of fiduciary duties based on the dividend payments and the tax sharing payment, because Plaintiff's claim based on

1            (b)    <u>Plaintiff has not satisfied the second *Aronson* prong by</u>

2 <u>showing a reasonable doubt EME's dividend payments were the product of a valid</u>

3 <u>exercise of business judgment</u>.

4         Because Plaintiff cannot satisfy the *Aronson* test's first prong, "there is a

5 presumption that the board's actions were the product of a valid exercise of business

6 judgment." *Charter Township*, 219 Cal.App.4th at 935.  To overcome this

7 presumption, "plaintiffs must plead particularized facts sufficient to raise (1) a

8 reason to doubt that the action was taken honestly and in good faith or (2) a reason

9 to doubt that the board was adequately informed in making the decision."  *Id.*

10        For the same reasons explained above with respect to Plaintiff's failure to

11 plead particularized facts showing the director defendants face a substantial

12 likelihood of liability, Plaintiff has not pled particularized facts showing either that

13 the individual directors did not act "honestly" and or "in good faith" or they were

14 not "adequately informed."  *See Charter Township*, 219 Cal.App.4th at 940 ("Our

15 resolution of the first prong of the *Aronson* test also leads to rejection of plaintiffs'

16 arguments that the Board's conduct was not a valid exercise of business judgment.")

17 Because Plaintiff has not pled particularized facts showing that EME was insolvent

18 at the time of the dividend payments – or that the director defendants knew that

19 EME was purportedly insolvent – as set forth above, Plaintiff has not shown that the

20 director defendants had any duty other than to act in the interests of EIX (whether or

21 not doing so was in the financial interest of EME).  Moreover, Plaintiff does not

22 "allege that any individual defendant director personally acted without honesty and

23 good faith." *In re J.P. Morgan Chase & Co. Shareholder Litig.*, 906 A.2d 808, 824

24 (Del. Ch. 2005).  In addition, nothing indicates the Board was not adequately

---

25 the dividend payments is time-barred, this aspect of Plaintiff's claim also should also be dismissed

26 under Rule 12(b)(6) for failure to state a claim.  *Lindell v. McCallum*, 352 F.3d 1107, 1110 (7th Cir. 2003) (stating that judge can dismiss "any parts of the complaint that do not state a claim.");

27 *Hill v. Opus Corp.*, 841 F.Supp.2d 1070, 1081-82 (C.D. Cal. 2011) (Morrow, J.) (dismissing parts of individual claims preempted by ERISA, while not dismissing other parts not preempted).

28

23472208.1

NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 14-CV-01058-ODW (ASx)

informed about the dividend payments.  "The complaint fails . . . to allege facts that would indicate that the board was presented with a decision, but was not provided with information from which it could make a proper decision."  *Id.*

Plaintiff asserts the director defendants' alleged "decision to cause EIX to unlawfully deplete EME by the Dividends . . . was not, and could not possibly have been, the product of a good faith exercise of business judgment" (¶116), but no facts are pled supporting this assertion.  Where a plaintiff "has not pleaded with particularity facts showing that the Board approved, acquiesced in, or otherwise supported" an allegedly wrongful transaction, a court "must presume that the Board had a legitimate business purpose . . . ."  *Silicon Graphics*, 183 F.3d at 990.  Plaintiff has "failed to raise a reasonable doubt as to the soundness of the Board's business judgment," and Plaintiff is "not excused from the pre-suit demand."  *Id.* at 991.

* * * *

In sum, because Plaintiff has "failed to allege facts excusing pre-suit demand on the Board with allegations of particularized facts showing wrongdoing by a majority of directors on a director-by-director basis" (*Charter Township*, 219 Cal.App.4th at 928), Plaintiff has not shown demand should be excused with respect to Plaintiff's breach of fiduciary duties claim based on the dividend payments.

> ### 2.    ***Plaintiff has not pled particularized facts showing demand futility with respect to her claim based on the tax sharing payment.***
>
> (a)    <u>Plaintiff has not satisfied the first *Aronson* prong by alleging particularized facts showing the director defendants face a substantial likelihood of liability with respect to the tax sharing payment</u>.

Plaintiff alleges the director defendants "are substantially likely to be held liable" for "causing EME to make the Tax Sharing Payment . . . ."  (¶122(b)).  But she does not allege facts, let alone particularized facts, to support this assertion.

<u>First</u>, while Plaintiff alleges that "[i]n causing SCE to receive the improper Tax Sharing Payment," the director defendants "consciously disregarded their

1  responsibilities" (¶122(d)), she does not allege *any* facts showing any involvement

2  by each director in a decision for EME to make the payment, so that a director could

3  have any liability for the payment.  *See* ¶79 (alleging only "[i]t is reasonable to

4  assume that the improper Tax Sharing Payment was discussed by the [EIX] Board in

5  the months leading up to the payment.")

6      Second, while Plaintiff also asserts in conclusory fashion that EME's $183

7  million tax sharing payment was "improper" (*e.g.*, ¶90), she does not allege any

8  facts to support that the payment EME made was not actually due and owing from

9  EME under the tax sharing agreements.  Indeed, over a year in advance of this

10 September 2012 tax sharing payment, EME's fiscal year 2010 10-K filed with the

11 SEC February 28, 2011, stated this payment would be made in 2012.  Ds' RJN, Ex.

12 D at p. 57 ("EME expects to make tax-allocation payments in 2012 . . . .")  EME's

13 fiscal year 2011 10-K filed with the SEC February 29, 2012, reiterated this

14 statement and estimated the payment amount at $185 million.  *Id.*, Ex. E at p. 20.

15 Moreover, while Plaintiff alleges the proposed complaint by EME's Creditors'

16 Committee sought repayment of this tax sharing payment (¶100), she ignores that

17 the basis of the Committee's demand for repayment was its assertion of a breach of

18 fiduciary duty based on a disagreement about the proper contractual interpretation of

19 the tax sharing agreements.  *See* Ds' RJN, Ex. F at ¶164 (asserting the allegedly

20 proper interpretation of "Section 7 of the Master Tax Sharing Agreement" did not

21 support making of tax sharing payment by EME.)  A disagreement about the

22 interpretation of the tax sharing agreements, much less one that fails to show

23 anything wrong about EIX's interpretation, does not provide particularized facts

24 showing that the director defendants face a "substantial likelihood of liability." for

25 purported breach of fiduciary duties through EME's making the tax sharing

26 payment.

27      Third, even if Plaintiff had alleged facts showing involvement of each of the

28 director defendants in EME's making of the tax sharing payment and that EME's

23472208.1                                    -21-

1  making of the tax sharing payment was "improper" because it was not owed by

2  EME, Plaintiff has not alleged particularized facts based on "intentional

3  misconduct" or any other ground showing a substantial likelihood of director

4  liability on a *non-exculpated* claim under EIX's Articles of Incorporation.  *See*

5  above at pp. 12:22-13:15, quoting Cal. *Corp. Code* §204(a)(10).  For this reason as

6  well, Plaintiff has not pled that any director defendant faces a "substantial likelihood

7  of liability" with respect to the tax sharing payment so that pre-suit demand could be

8  excused.

9           (b)    Plaintiff has not satisfied the second *Aronson* prong by

10 showing a reasonable doubt EME's tax sharing payment was the product of a valid

11 exercise in business judgment.

12         For the same reasons that Plaintiff has failed to plead facts showing the

13 director defendants face a substantial likelihood of liability based on the tax sharing

14 payment, Plaintiff has not pled particularized facts showing either the individual

15 directors did not act "honestly" or "in good faith" or were not "adequately

16 informed" with respect to the payment.  Indeed, as set forth above, Plaintiff has not

17 alleged facts showing *any* involvement by the director defendants in a decision for

18 EME to make the tax sharing payment.  *See* ¶79 (alleging only "[i]t is reasonable to

19 assume the improper Tax Sharing Payment was discussed by the [EIX] Board in the

20 months leading up to the payment.")

21         While Plaintiff asserts the director defendants' alleged "decision to cause EIX

22 to unlawfully deplete EME by . . . the Tax Sharing Payment was not, and could not

23 possibly have been, the product of a good faith exercise of business judgment"

24 (¶116), as set forth above, no particularized facts are pled to support this assertion,

25 and a court therefore "must presume that the Board had a legitimate business

26 purpose . . . ." *Silicon Graphics*, 183 F.3d at 990.  Because Plaintiff has "failed to

27 raise a reasonable doubt as to the soundness of the Board's business judgment,"

28 Plaintiff is "not excused from the pre-suit demand." *Id.* at 991.

1        * * * *

2        In sum, with respect to the tax sharing payment, Plaintiff also has "failed to

3   allege facts excusing pre-suit demand on the Board with allegations of particularized

4   facts showing wrongdoing by a majority of directors on a director-by-director basis"

5   (*Charter Township*, 219 Cal.App.4th at 929), and Plaintiff has not shown demand

6   should be excused for her breach of fiduciary duties claim based on the payment.

7        3.   ***Plaintiff has not alleged facts to support demand should be***

8   ***excused because the director defendants were named in the Creditors Committee's***

9   ***draft complaint or because of the "settlement" EIX entered into.***

10       Plaintiff asserts (¶122(c)) the director defendants "face additional substantial

11  likelihood of liability" and are "conflicted" because "they were named defendants in

12  the proposed action the Creditors Committee sought to bring on behalf of EME"

13  "which EIX was forced to settle for . . . a payment of $634 million."  But Plaintiff

14  does not explain how this assertion supports excusing demand for Plaintiff's breach

15  of fiduciary duties claim based on the dividend or the tax sharing payments.

16       As shown above, Plaintiff has not pled particularized facts to support that the

17  director defendants face a substantial likelihood of liability in connection with these

18  payments, and the fact that the dividend payments and the tax sharing payment are a

19  subject of the Creditors' Committee draft complaint does not remedy this failure.

20  Plaintiff also provides no explanation for her assertion that pre-suit demand in this

21  action should be excused on the basis of a prior draft complaint that was never filed

22  or litigated.  Moreover, while Plaintiff alleges EIX's agreement to pay $634 million

23  in a settlement with "EME and a majority of EME's creditors" (¶104), Plaintiff does

24  not allege this settlement breached any fiduciary duty owed by EIX's directors or

25  that the payment or settlement generally gives rise to a "substantial likelihood of

26  liability" on the part of any director.[9]  In short, Plaintiff's references to the Creditor

27  _____

28  [9] Plaintiff asserts in conclusory fashion that under the tax sharing agreements EIX had the

23472208.1

-23-

1   Committee's draft complaint and to the settlement does not support excusal of pre-

2   suit demand for Plaintiff's breach of fiduciary duties claims.

3        4.   ***Plaintiff has not alleged facts showing either director***

4   ***defendant Craver or Olson is not independent and, even if she had, it would not***

5   ***support demand should be excused.***

6        Plaintiff also asserts director defendants Olson and Craver "lack[]

7   independence" from the other directors of EIX.  As to Mr. Craver, Plaintiff alleges

8   "in his position as EIX's Chairman, President and CEO," he "stands to earn millions

9   of dollars in annual salary, bonuses and other compensation, all of which must be

10   approved by the Company's current Compensation Committee comprised of

11   defendants Chang, Nogales, Taylor and White" and he "therefore lacks

12   independence from these directors." ¶122(e).  As to Mr. Olson, Plaintiff alleges that

13   because he is a partner of Munger, Tolles & Olson, "which provides legal services

14   to the EIX companies" and, according to Plaintiff, the firm receives fees for legal

15   services of "millions of dollars a year," Mr. Olson "lacks independence from the

16   other directors of EIX."  ¶122(f).  There is no support for Plaintiff's assertions.

17        "'Independence' exists when a director's decision is based on 'the corporate

18   merits of the subject before the board' rather than on 'extraneous considerations or

19   influences.'"  *In re Sagent Tech., Inc., Deriv. Litig.*, 278 F.Supp.2d at 1088 (quoting

20   *Aronson*, 473 A.2d at 816).  A claim of lack of director independence must be

21   supported by "particularized allegations."  *Id*.  Plaintiff alleges no benefit or

22   compensation to Mr. Craver or to Mr. Olson upon "which the director[s] . . . [are] so

23   dependent . . . that its threatened loss might create a reason to question whether the

24   director is able to consider" the merits of a demand objectively.  *Telxon Corp. v.*

25   *Meyerson*, 802 A.2d 257, 264 (Del. 2002).  Thus, as to Mr. Craver, "Plaintiff has not

26   ──────────────────

27   authority to use EME's $1.2 billion in tax attributes without having to make any payment to EME.
    ¶110.  But Plaintiff ignores that she also alleges that the tax sharing agreements had been
    terminated.  ¶89.

28

1  alleged any particularized facts creating a reasonable inference that . . . [he is] so

2  influenced by the compensation committee members that . . . [he] could not consider

3  the corporate merits of Plaintiff's demand." *Richardson v.Ulsh*, 2007 WL 2713050,

4  at *15 (D. N.J. Sept. 13, 2007).  As to Mr. Olson, "[a] director's association with a

5  company that does business with the corporation does not in and of itself establish a

6  lack of independence." *Katz v. Chevron Corp.*, 22 Cal.App.4th 1352, 1368 (1994).

7  Moreover, even if Plaintiff had pled particularized facts showing that Mr. Olson or

8  Mr. Craver was not "independent," Plaintiff has not shown that the other ten

9  members of EIX's board of directors are not independent, with the ability to make a

10  "disinterested" and "independent" decision if Plaintiff had made the required pre-

11  suit demand.  *Kernaghan v. Franklin*, 2008 WL 4450268, at *9 (S.D.N.Y. Sept. 29,

12  2008) ("[E]ven if a reasonable doubt is raised with respect to . . . [the independence

13  of two directors], there are insufficient particularized allegations that would

14  implicate the independence of any other director-Defendant."  (footnote omitted.))

15  **IV.   CONCLUSION.**

16      Plaintiff has failed to allege particularized facts showing that her failure to

17  have made a pre-suit demand should be excused as "futile."  In addition, to the

18  extent Plaintiff's claim is based on the allegedly improper dividend payments, it is

19  time-barred.  The Amended Complaint and this action should therefore be dismissed

20  "with prejudice." *Lucas v. Lewis*, 428 Fed. Appx. at 696.

21  Dated:  May 9, 2014                    Respectfully submitted,
22                                         MUNGER, TOLLES & OLSON LLP

23

24                                         By: _____
                                                      */s/John W. Spiegel*
25                                                    John W. Spiegel

26                                         Attorneys for Defendants

27

28